# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| WILLIAM JAMES GRIFFIN, et al. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BENEFYTT TECHNOLOGIES, INC., et al. | ) Case No. 0:20-cv-62371-AHS |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................. 1

    I.     PLAINTIFFS' COMPLAINT SHOULD NOT BE DISMISSED IMPERMISSIBLE SHOTGUN PLEADING ....................................... 1

    II.    PLAINTIFFS HAVE STANDING TO ASSERT RICO CLAIMS AND TO SEEK DAMAGES FOR MEDICAL EXPENSES .............. 4

        A.    Plaintiffs Have Sufficiently Alleged Causation Under Section 1964(c) ................................................................... 4

        B.    Plaintiffs' Alleged Medical Expenses Are Injuries to "Business or Property" ............................................................. 7

    III.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A VIOLATION OF SECTION 1962(c) .................................................... 9

    IV.   PLAINTIFFS HAVE SUFFICIENTLY PLED CONSPIRACY CLAIMS UNDER 1962(d) .................................................... 16

    V.    PLAINTIFFS HAVE ALSO ALLEGED CLAIMS FOR AIDING AND ABETTING A VIOLATION OF 1962(c) ................................ 17

    VI.   PLAINTIFFS' PRAYER FOR INJUNCTIVE AND DECLARATORY RELIEF SHOULD NOT BE DISMISSED .......... 18

CONCLUSION ......................................................................................... 19

i

TABLE OF AUTHORITIES

## Cases

*Arnold v. Board of Educ. of Escambia County Ala.*,
   880 F.2d 305 (11th Cir.1989) ...............................................................................17

*Beck v. Prupis*,
   162 F.3d 1090 (11th Cir. 1998). ..................................................................... 7, 17

*Beck v. Prupis*,
   529 U.S. 494 (2000) ............................................................................................17

*Belin v. Health Insurance Innovations, Inc.*, No. 0-19-cv-61430-AHS,
   (S.D. Fla. Oct.. 22, 2019) (adopted by 2019 WL 9575230) ........................ *passim*

*Blevins v. Aksut*,
   849 F.3d 1016 (11th Cir. 2017) ........................................................................8, 9

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) .............................................................................................5

*Cox v. Administrator U.S. Steel & Carnegie*,
   17 F.3d 1386 (11th Cir. 1994) ..............................................................................7

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) ..............................................................................19

*FTC v. Simple Health Plans, LLC et al.*,
   No. 0:18:-cv-62593-DPG (D.E. 1, Oct. 29, 2018) ...................................... *passim*

*H.J. Inc. v. N.W. Bell Tel. Co.*,
   492 U.S. 229 (1989) ..................................................................................... 15, 16

*H.J. Inc. v. NW Bell Telephone Co.*,
   109 S. Ct. 2893 (1989) ................................................................................. 14, 15

*In re Managed Care Litig.*,
  135 F. Supp. 2d 1253 (S.D. Fla. 2001) ....................................................7

*In re Managed Care Litig.*,
  150 F. Supp. 2d 1330 (S.D. Fla. June 12, 2001)....................................12

*Jackson v. BellSouth Telecomm.*,
  372 F.3d 1250 (11th Cir. 2004) ...........................................................16

*Jackson v. Sedgwick Claims Mgmt. Servs. Inc.*,
  731 F.3d 556 (6th Cir. 2013) .................................................................8

*Kirwin v. Price Commun. Corp.*,
  391 F.3d 1323 (11th Cir. 2004). ..........................................................16

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).......................17

*Laborers Health & Welfare Fund v. Bayer Corp.*,
  655 F. Supp; 2d 1270 (S.D. Fla. 2009) ..................................................5

*Salinas v. United States*,
  522 U.S. 52, 118 S.Ct. 477 (1997)..........................................................7

*United States v. Turkette*,
  452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)...........................5

*Weiland v. Palm Beach County Sheriff's Office*,
  792 F.3d 1313 (11th Cir. 2015) ........................................................2, 3

**Statutes**

28 U.S.C. § 1962(c) ...................................................................................5

**Rules**

Fed. R. Civ. P. 15(a) (2)..........................................................................19

Plaintiffs submit this response in opposition to the motion to dismiss filed by Defendants Benefytt Technologies, Inc. (f/k/a Health Insurance Innovations, Inc.) and Health Plan Intermediaries Holdings, Inc. ("Defendants").

## INTRODUCTION

Plaintiffs' Ameded Complaint (D.E. 50) (the "Complaint") extensively details the fraudulent scheme undertaken by Defendants and their co-conspirators, Simple Health, Assurance, and Nationwide. In their pro forma motion to dismiss, Defendants now claim that the Complaint provides too much detail, too little detail, or the wrong kind of detail. However, in doing so, Defendants ignore large portions of the Complaint and mischaracterize others. Defendants attempt not only to confuse and to misrepresent Plaintiffs' allegations but also to misconstrue the law. In *Belin v. Health Insurance Innovations, Inc.*, No. 0-19-cv-61430-AHS, D.E. 39 (S.D. Fla. Oct.. 22, 2019) (adopted by 2019 WL 9575230) ("*Belin Order*"), this Court  denied Defendants' motion to dismiss on many of these same grounds. Defendants' motion should likewise be denied.

## ARGUMENT

## I.   PLAINTIFFS' COMPLAINT SHOULD NOT BE DISMISSED AS AN IMPERMISSIBLE SHOUTGUN PLEADING

Defendants improperly accuse Plaintiffs of "shotgun pleading". The Eleventh Circuit defines this practice as follows:

The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding

1

counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.[1]

As the court makes clear, "the unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give Defendants adequate notice of the claims against them and the grounds upon which each claim rests."[2]

First, Defendants claim that Plaintiffs have committed shotgun pleading by incorporating a long list of general allegations followed by paragraphs adopting and incorporating them. Defendants misread the Complaint and the rule. As discussed in *Weiland*, there is nothing improper about having a fact section that describes in detail the wrongful acts committed by the Defendants the problem only comes about when these facts are extraneous to the causes of action presented in the Complaint.[3] However, in this case, the factual allegations relate specifically to Plaintiffs' RICO

---

[1] *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015).
[2] *Id.* at 1323.
[3] *See also Belin Order* at 5 ("The incorporation of general allegations into each separate count within a complaint does not transform it into a shotgun pleading, particularly where the counts are similar in nature.").

claims, who the actors were, and which acts they committed. Furthermore, no count impermissibly adopts and incorporates the preceding allegations. Like the complaint in *Weiland*, Plaintiffs' Complaint does not constitute shotgun pleading but instead gives Defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Second, Defendants claim the Complaint is "ambiguous" and "vague."[4] In support of this argument, Defendants unsuccessfully attempt to cherry-pick allegations regarding Plaintiff Ashely Lawley out of more then 150 well-pled paragraphs. Yet, the allegations regarding Lawley are neither vague nor ambiguous. As set forth in the Complaint, Defendants' agent specifically represented that Lawley was purchasing a comprehensive major medical plan that would cover eighty percent of her medical charges.[5] In reliance, Ms. Lawley purchased the plan and paid the premiums.[6] Yet, the plan did not pay eighty percent of the charges Ms. Lawley incurred for the procedure she specifically discussed with Defendants' agent.[7]

---

[4] Defendants Benefytt Technologies, Inc., and Health Plan Intermediaries Holdings, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint and Memorandum in Support Thereof (D.E. 57) ("Motion") at 7-8.

[5] Plaintiffs' Amended Complaint ("Am. Compl.") (D.E. 50) ¶ 80.

[6] *Id.* ¶¶ 81-82.

[7] *Id.* ¶¶ 86-88.

## II.   PLAINTIFFS HAVE STANDING TO ASSERT RICO CLAIMS AND TO SEEK DAMAGES FOR MEDICAL EXPENSES

### A. Plaintiffs Have Sufficiently Alleged Causation Under Section 1964(c)

Defendants argue that Plaintiffs do not allege they were injured as a result of RICO violations because Plaintiffs "fail to allege that any association between the HII Defendants and any other defendants caused them any injury."[8] Defendants argue that "every alleged act that purportedly injured…Plaintiffs is attributed directly and exclusively to the HII Defendants."[9]

As an initial matter, Plaintiffs allege that Plaintiffs' "benefit packages" were marketed through Assurance[10] or through Simple Health – the Marketing Company the FTC successfully enjoined from the fraudulent practices at issue in this litigation.[11]   Moreover, Defendants' argument fails because Defendants misconstrue the fundamental nature of enterprise, conspiracy, and aiding and abetting liability. RICO liability does not depend on each member of the enterprise or the conspiracy personally interacting with and defrauding the plaintiff. Instead, "RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a

---

[8] Motion at 8.
[9] Motion at 9.
[10] Am. Compl. ¶¶ 9, 10.
[11] *Id*. ¶¶ 7, 8, 117.

pattern of acts indictable as mail fraud."[12] Plaintiffs have alleged the existence of "a group of persons associated together for a common purpose of engaging in a course of conduct,"[13] specifically the common purpose of marketing and selling limited indemnity and limited benefit plans at enormously inflated prices for the benefit of Defendants and the Marketing Companies.[14] Plaintiffs have alleged an association-in-fact enterprise. Plaintiffs have also pled the roles of Defendants and the Marketing Companies in controlling and participating in the enterprise.[15] In addition, Plaintiffs have alleged that Defendants and the Marketing Companies committed thousands of acts of racketeering activity in violation of RICO.[16] Finally, Plaintiffs have alleged that Plaintiffs were injured in their business or property by reason of the conduct of the enterprise's affairs through a pattern of mail and wire fraud.[17] Accordingly, Plaintiffs have alleged causation and a right of recovery for violations of 28 U.S.C. § 1962(c).

*Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp; 2d 1270 (S.D. Fla. 2009) is simply inapposite. In *Bayer*, the Court found the plaintiff had not pled proximate cause where the plaintiff alleged "that, absent Bayer's deceptive

---

[12] *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008)
[13] *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524(1981)
[14] Am. Compl. ¶¶ 27, 106, 111. *See Belin Order* at 15 (finding allegations that the enterprise's purpose was "to deceptively maximize profitability" to be sufficient).
[15] *Id.* ¶¶28-34, 104, 106, 112.
[16] *Id.* ¶¶ 38-67, 115-125.
[17] *Id.* ¶¶ 68-101, 114, 147, 152, 158.

marketing, physicians would not have used Trasylol, and therefore Plaintiff would not have had to pay for Trasylol."[18] Unlike the plaintiff in *Bayer*, Plaintiffs have alleged a direct connection between Defendants' fraudulent scheme and Plaintiffs' resulting injuries.[19]

Defendants also argue that Plaintiffs cannot allege injury "because they never purchased the limited benefit indemnity plans at the center of the alleged scheme" and therefore "FTC's allegations of fraud against Simple Health in connection with its sale of limited benefit plans" are irrelevant.[20] This argument is, of course, nonsensical.The scheme alleged in both Plaintiffs' Complaint and the FTC complaint against Simple Health is that Defendants misrepresent that their plans provide comprehensive health insurance but instead the plan provides only limited benefits.[21] Plaintiffs have alleged that they were victims of this scheme and were injured as a result.[22] Accordingly, Plaintiffs have sufficiently alleged causation with

---

[18] *Bayer*, 655 F. Supp. at 1280.
[19] The Court in *Belin* likewise determined that the "Amended Complaint makes plain that Plaintiffs allege a direct injury caused by Defendnats." *Belin Orde*r at 8.
[20] Motion at 9-10.
[21] *FTC v. Simple Health Plans, LLC et al.,* No. 0:18:-cv-62593-DPG, Complaint (D.E. 1, Oct. 29, 2018) ("FTC Compl.") ¶ 15 ("Defendants claim to offer consumers comprehensive health insurance or its equivalent") and ¶ 19 ("Limited benefit plans…provide non-comprehensive coverage capped at a specific amount for a specific service, treatment, condition, or disease. Limited benefit plans do not have the effect of transferring enrollees' risk to a third party"); Am. Compl. ¶ 1 ("While Defendants' marketed their policies as comprehensive medical insurance, the policies were instead limited benefit non-ACA compliant health plans that were marketed along with largely bogus add-on products like discount cards, association memberships, and accidental health insurance to make them seem more comprehensive than they were in reality.")
[22] Am. Compl. ¶¶ 7-11, 69-100.

regard to their substantive RICO claims.

Moreover, because Plaintiffs have alleged the existence of a conspiracy with a common purpose and the commission of predicate acts in furtherance of the conspiracy that resulted in injury to Plaintiffs, Plaintiffs have also stated a civil RICO conspiracy claim.[23] Finally, because Plaintiffs have alleged that Defendants and the Marketing Companies aided and abetted each other's RICO violations, Plaintiffs have stated a claim for aiding and abetting.[24]

### B. Plaintiffs' Alleged Medical Expenses Are Injuries to "Business or Property"

Plaintiffs have alleged that Defendants' illegal conduct caused two distinct injuries. First, Plaintiffs allege that they purchased insurance and paid fees and premiums they would not have paid absent Defendants' misrepresentations and omissions.[25] Defendants have not and cannot legitimately move to dismiss Plaintiffs' RICO claims on the basis that such allegations do not constitute injuries to business or property.

Plaintiffs also allege that they incurred unreimbursed medical expenses that would have been covered by comprehensive medical insurance.[26] Defendants first

---

[23] *Beck v. Prupis*, 162 F.3d 1090, 1098 (11th Cir. 1998).  *See also Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 477 (1997) ("[S]o long as they share a common purpose, conspirators are liable for the acts of their co-conspirators.")

[24] *See In re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1267 (S.D. Fla. 2001) (citing *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994)).

[25] Am. Compl. ¶¶ 68, 101, 147, 152, 158.

[26] *Id.* ¶¶ 147, 152, 158.

argue that Plaintiffs have not alleged that they "actually paid the unreimbursed medical expenses or suffered any loss whatsoever." Yet, Plaintiffs have clearly alleged that they incurred uncovered medical expenses because their plans lacked the basic benefits Defendants represented.[27] Accordingly, Plaintiffs have sufficiently alleged injuries to their business or property.

Defendants also argue that because Plaintiffs' medical expenses arise from personal medical conditions, "the 'unreimbursed medical expenses' are 'pecuniary losses associated with [Plaintiffs'] person injur[ies'] that cannot be recovered under the RICO Act."[28] Yet, *Blevins* is dispositive with regard to Defendants' argument.

In *Blevins*, Plaintiffs alleged a scheme whereby a physician would falsely tell a patient he or she needed heart surgery, the physician would perform the surgery at one of the Defendants' facilities, and Defendants would bill the patient for the unnecessary procedure.[29] Defendants, as here, argued that Plaintiffs injuries did not constitute an injury to business or property and the Magistrate agreed, "conclud[ing] that Plaintiffs failed to allege injuries to their business or property because their alleged harm – their medical expenses – flowed from their personal injuries – the unnecessary procedures."[30] The Eleventh Circuit readily rejected this rationale,

---

[27] *Id.* ¶¶ 76, 78, 84, 86, 87, 92, 96, 100.
[28] Motion at 10-11 (citing *Blevins v. Aksut*, 849 F.3d 1016, 1021 (11th Cir. 2017) and *Jackson v. Sedgwick Claims Mgmt. Servs. Inc.*, 731 F.3d 556 (6th Cir. 2013)).
[29] *Blevins*, 849 F.3d at 1018.
[30] *Id.* at 1021.

finding the Plaintiffs had alleged an injury to business or property:

> Plaintiffs seek to recover damages under § 1964(c) for the amounts they paid for the unnecessary heart procedures. **These injuries do not flow from any personal injuries.** Rather, as in *Ironworkers*, the payments themselves are economic injuries because they were for medically unnecessary procedures.

*Id.* (emphasis supplied). Defendants' only contention is that Plaintiffs' injuries are losses flowing from personal injuries because "Plaintiffs' medical expenses arise from personal medical conditions."[31] Defendants' argument is absurd on its face, demonstrating no connection between Plaintiffs' unreimbursed medical expenses and any personal injury. Clearly, Defendants' contention is far more attenuated than the argument the Eleventh Circuit rejected in *Blevins*. Plaintiffs have pled injuries to their business or property.

## III.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A VIOLATION OF SECTION 1962(c)

Defendants argue that Plaintiffs have failed to plead both a pattern of racketeering activity and an enterprise under RICO. In doing so, Defendants ignore most of the Complaint.

Plaintiffs have alleged an association-in-fact enterprise, including the relationships between Defendants and the Marketing Companies. [32] In the Complaint, Plaintiffs specifically allege that Defendants developed, distributed and

---

[31] Motion at 11.
[32] *See Belin Order* at 15-18 (finding Plaintiffs' allegations regarding the relationships between the parties and each party's participation in the affairs of the enterprise to be sufficiently pled).

acted as an administrator of limited benefit health insurance plans and supplemental products.[33] Contary to Defendants' marketing claims, these products are not comprehensive health insurance coverage and do not comply with the Affordable Care Act.[34] Specifically, they do not cover pre-existing conditions, do not have networks of providers who have agreed to their price schedules and do not provide for the other mandatory ACA benefits.[35] They do have restrictive limits on individual and total benefits.[36]

In 2013, Defendants recruited and conspired with various companies, including Assurance, Simple Health, and Nationwide to market these health plans and secondary junk products as comprehensive health insurance.[37] Defendants provided "advance commission payments" in order to assist their co-conspirators with the cost of "lead acquisition" and to provide working capital.[38] Defendants also provided these co-conspirators "training, audit and other support, and monitoring."[39]

The Complaint details how Defendants, along with the Marketing Companies, created misleading lead generation websites and reviewed, edited and approved fraudulent sale scripts that were used in phone conversations.[40] The co-conspirators

---

[33] Am. Compl. ¶ 19.
[34] *Id.* ¶ 22.
[35] *Id.* ¶ 23.
[36] *Id.*
[37] *Id.* ¶ 28.
[38] *Id.* ¶ 30.
[39] *Id.* ¶ 29.
[40] *Id.* ¶¶ 34(g) and (l), 106(g) and (l) .

also used deceptive search engine optimization in pay per click advertising to drive consumers seeking comprehensive health coverage to their websites.[41]

The Complaint further details how Assurance, Simple Health and Nationwide solicited sales by phone and took applications, issued coverage, and collected premiums through an Internet portal provided by Defendants.[42] Following the initial sale of a policy, Defendants collected payments and provided member support services.[43] Defendants then distributed commissions to Assurance, Simple Health and Nationwide.[44] In fact, the Defendants paid commissions to Simple Health of almost $200 million for the period of 2014 to 2018.[45] Over this time, the Complaint alleges that Defendants and their co-conspirators engaged in thousands of acts of racketeering activity[46] and that just Simple Health's involvement alone in the scheme "left tens of thousands of consumers who thought they had purchased comprehensive coverage without such coverage."[47] Class members relied on Defendants' and their co-conspirators' misrepresentations and omissions in purchasing the limited benefit health insurance plans and paying premiums.[48] Defendants ignore all of these allegations.

---

[41] *Id.* ¶¶ 42-47.
[42] *Id.* ¶¶ 28, 33, 34(h), 106(h).
[43] *Id.* ¶¶ 31-33.
[44] *Id.* ¶ 31, 34(o).
[45] *Id.* ¶ 36.
[46] *Id.* ¶ 115.
[47] *Id.* ¶1 37.
[48] *Id.* ¶ 68.

Defendants also paint a misleading picture regarding the allegations related to the individual Plaintiffs, attempting to wholly divorce the individual Plaintiffs' allegations from Plaintiffs' well-pled allegations regarding Defendants' scheme. Defendants' argument again ignores and misleads regarding Plaintiffs' allegations. As the Court in *Belin* noted, "'Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule.'"[49] As in *Belin*, Plaintiffs "have plead the underlying fraud in significant detail."[50] Plaintiffs (and the FTC) allege that Defendants' scheme targeted consumers like Plaintiffs seeking comprehensive medical insurance and the standardized scripts represented that consumers were, in fact, obtaining comprehensive health insurance.[51] Comprehensive health insurance plans generally involve an arrangement between an insurance company and a consumer in which the company agrees to pay a substantial portion of the healthcare expenses that the consumer might incur in exchange for consumers' premium payments.[52] Rather than providing comprehensive health insurance, Defendants sold Plaintiffs and other consumers limited benefit plans which did not provide comprehensive coverage, excluding coverage for preexisting

---

[49] *Belin Order* at 10 (quoting *In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1347 (S.D. Fla. June 12, 2001).
[50] *Belin Order* at 11.
[51] *Id..* ¶¶ 1, 52, 67; FTC Compl. ¶¶ 15, 16, 21.
[52] FTC Compl. ¶ 15.

conditions and prescription drugs and imposing very low dollar limits on other services and excluding coverage for mental health benefits, maternity benefits, or other essential health benefits.[53] In addition, the plans do not have networks of healthcare providers that have agreed to their price schedules.[54]

As set forth in the Complaint, Plaintiffs were victims of this scheme.[55] Contrary to Defendants' assertions, the Complaint alleges the specific misrepresentations made to Plaintiffs that led each of them to believe they were obtaining comprehensive health insurance, showing how the salesperson spoke to them, followed the script and represented to them that they were buying comprehensive health insurance that would cover 80% of their medical expenses.[56] The Complaint makes clear that the plans Plaintiffs purchased were not comprehensive and did not cover a substantial percentage of their health expenses

---

[53] Am. Compl. ¶¶ 1, 23.

[54] *Id.* ¶23. *See also* FTC Compl. ¶19 ("Limited benefit plans, by contrast, provide non-comprehensive coverage capped at a specific amount for a specific service, treatment, condition, or disease. Limited benefit plans do not have the effect of transferring enrollees' risk to a third party.").

[55] *See also Belin Order* at 12 (finding the "Amended Complaint also alleges with particularity how the scheme was applied personally to each named Plaintiff").

[56] Am. Compl. ¶ 72 (agent used script); ¶ 73 (represented the plan would pay 80% of medical expenses in addition to defined benefits and represented the plan provided major medical coverage that would cover doctor bills, hospital costs, prescription drugs and similar costs); ¶ 80 (represented that the plan was a "major medical" plan, was comprehensive, and would cover 80% of charges for doctor visits, hospital stays, surgeries, and other medical services); ¶ 90 (represented that the plan involed a network and a PPO and would cover 80% of medical and dental expenses and would require only a $2000 out of pocket maximum; ¶ 93 (represented the plan would pay for 80% of medical expenses and specially confirmed Plaintiff's husband's doctors were "in network."

but, to the contrary, left them deeply in debt.[57] Defendants' argument regarding the sufficiency of Plaintiffs' allegations fails in its entirety. The desperation of Defendants' motion is highlighted by Defendants' argument that even if they represented to Plaintiffs that the plan was comprehensive, that representation only applied to the Plaintiff and not to Plaintiffs' family members who were covered under the same plan.[58]

Defendants' argument that the allegations related to the individual Plaintiffs do not establish RICO's continuity requirement also misses the mark, ignoring the numerous allegations regarding the pervasive fraudulent scheme that continues or at least continued for several years. Under the *H.J. Inc.* standard, as few as two predicate acts will establish the existence of a pattern of racketeering activity if they are related and "amount to or pose a threat of continued criminal activity."[59]

Plaintiffs have alleged both closed-ended and open-ended continuity. Plaintiffs have alleged that Defendants and the Marketing Companies committed thousands of predicate acts.[60] Each of these acts was related, had a similar purpose,

---

[57] *Id.* ¶ 7 (plan did not provide comprehensive coverage; ¶ 78 (did not pay medical expenses as represented); ¶ 86 (said medical expenses were not covered despite representation that condition would not be considered preexisting); ¶ 87 (did not pay 80% of medical charges as represented); ¶ 92 (did not have a network agreement as represented and did not pay 80% of medical charges as represented); ¶ 96 (did not have a network agreement as represented and did not pay 80% of medical charges as represented); ¶ 100 (refused to pay claims as represented).
[58] *See* Motion at 15, 16.
[59] 109 S. Ct. 2893, 2902 (1989).
[60] Am. Compl. ¶¶ 38-68, 115-123.

involved the same or similar participants and methods of commission, had similar results and impacted similar victims, including Plaintiffs and Class Members.[61] As Plaintiffs have alleged, the enterprise has been functioning and involved in the fraudulent scheme for more than five years.[62] The facts alleged in the Complaint, including Defendants' involvement in the funding and creation of deceptive websites and internet advertising, development of call scripts, funding of co-conspirators' operations, and the pervasive nature of their efforts since 2013 show the fraudulent scheme employed with regard to Plaintiffs is part of the regular way of conducting business. "A party alleging a RICO violation may demonstrate continuity...by proving a series of related predicates extending over a substantial period of time."[63] Plaintiffs' detailed allegations regarding Defendants' multi-year scheme is sufficient to establish continuity.

Plaintiffs have also alleged that Nationwide has taken a more active role since the FTC completed its action against Simple Health and have alleged the scheme has continued despite the FTC's actions.[64] Plaintiffs have also alleged that the acts were part of the Defendants' "regular way of doing business."[65]  Accordingly, Plaintiffs

---

[61] *Id.* ¶¶ 124-125.
[62] *Id.* ¶ 104.
[63] *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).
[64] Am. Compl. ¶¶ 104, 123.
[65] *Id.* ¶¶ 12, 19-21, 26, 28, 33-34, 41-42, 44-45.

have also alleged open-ended continuity.[66]

## IV.   PLAINTIFFS HAVE SUFFICIENTLY PLED CONSPIRACY CLAIMS UNDER 1962(d).

As previously discussed, Plaintiffs have alleged a claim under § 1962(c). This violation of 1962(c) also forms the basis of Plaintiffs' violation of § 1962(d). Despite Defendants' argument, Plaintiffs have pled facts from which the Court can reasonably infer the existence of a conspiracy.[67] Defendants argue that Count II fails because a parent corporation cannot conspire with its subsidiary.  Motion at 18. First, throughout the Complaint, Plaintiffs make clear that Defendants conspired not only with themselves but with co-conspirators including Simple Health, Nationwide and others.[68] Moreover, the Eleventh Circuit has held that "the intracorporate conspiracy doctrine cannot be invoked to defeat a § 1962(d) claim."[69] Defendants incorrectly argue that Plaintiffs have not pled their conspiracy claims with sufficiently particularity. Plaintiffs have provided sufficient details regarding the conspiracy, including the participants, the goals, and the acts taken by Defendants and co-conspirators in furtherance of the conspiracy.[70] Regardless, RICO conspiracy claims

---

[66] *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1267 (11th Cir. 2004) (citing *H.J. Inc.,* 492 U.S. at 242–43, 109 S.Ct. at 2902) (explaining that in order to allege open-ended continuity, a plaintiff may "allege either that the alleged acts were part of the defendants' 'regular way of doing business,' or that the illegal acts threatened repetition in the future.

[67] *See also Belin Order* at 19 (determining that Plaintiffs had sufficiently alleged facts to permit an inference that "Defendants agreed to the conspiracy's overall objective" as well as "an agreement to commit two predicate acts.")

[68] Am. Compl. ¶ 28.

[69] *Kirwin v. Price Commun. Corp.*, 391 F.3d 1323, 1327 (11th Cir. 2004).

[70] *See* Am. Compl. ¶¶ 28-68.

are not subject to the requirements of Rule 9(b). "[A] plaintiff must simply plead general facts from which a conspiracy can be inferred to withstand a 12(b)(6) motion."[71]

Finally, Defendants' suggestion that Plaintiffs must allege injuries related to the conspiratorial acts, rather than the racketeering activity, is contradicted by the case they cited. "We conclude, therefore, that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute."[72] As the Eleventh Circuit explained, "The requirement that a civil RICO plaintiff prove injury resulting from a racketeering act does not… render the RICO conspiracy provision superfluous."[73] Plaintiffs have alleged a conspiracy to violate 1962(c) in violation of 1962(d) and have alleged injuries from acts of racketeering.[74] This is sufficient to state a claim for violation of 1962(d).[75]

## V.   PLAINTIFFS HAVE ALSO ALLEGED CLAIMS FOR AIDING AND ABETTING A VIOLATION OF 1962(c).

Defendants' arguments that Plaintiffs have not stated a claim for aiding and

---

[71] *Arnold v. Board of Educ. of Escambia County Ala.,* 880 F.2d 305, 366 (11th Cir.1989), *overruled on other grounds by, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).
[72] *Beck v. Prupis*, 529 U.S. 494, 507 (2000)
[73] *Beck v. Prupis*, 162 F.3d 1090, 1099 (11th Cir. 1998).
[74] *See,e.g.*, Am. Compl. ¶¶ 130, 150, 151.
[75] *Beck*, 529 U.S. at 506.

abetting a violation of Section 1962(c) all fail.[76] First, Defendants argue that because Plaintiffs have not alleged a substantive violation of Section 1962(c), their aiding and abetting claim fails as well.[77] However, as set forth above, Plaintiffs have properly alleged a substantive violation of Section 1962(c); as such, this argument is unavailing. Second, Defendants contend that, although Plaintiffs allege that Defendants aided and abetted the Marketing Companies, Plaintiffs do not allege any predicate acts committed by the Marketing Companies that were targeted at the named Plaintiffs.[78]  Again, this is simply not true. As set forth in paragraphs 7-10, the plans sold to Plaintiffs were marketed through Simple Health and Assurance.[79] This argument therefore fails as well.

## VI.    PLAINTIFFS' PRAYER FOR INJUNCTIVE AND DECLARATORY RELIEF SHOULD NOT BE DISMISSED.

As discussed above, Plaintiffs have properly alleged RICO violations. Accordingly, their requests for injunctive and declaratory relief are valid.  18 U.S.C. §1964(a). Plaintiffs have established standing to assert RICO claims, regardless of whether they are likely to be harmed in future by Defendants' conduct. Therefore, whether Plaintiffs may seek injunctive relief on behalf of absent class members is a

---

[76] *See Belin Order* at 20-22 (rejecting Defendants' arguments regarding dismissal of the Plaintiffs' aiding and abetting claims).
[77] Motion at 19.
[78] *Id.*
[79] Am. Compl. ¶¶ 7-10, 90, 97.

question to be resolved under Rule 23, not a motion to dismiss.[80] Plaintiffs allege facts that show class members will suffer future harm absent injunctive relief. Specifically, Plaintiffs allege an ongoing scheme to deceive consumers, through wire and mail fraud, into purchasing short-term "health insurance" that in fact provides little or no health coverage when they become ill or injured, which will result in future untreated illnesses or injuries unless Defendants are enjoined. Moreover, Defendants continue to collect premiums and to profit from their fraudulent scheme.[81] As noted in paragraph 78, Defendants continued to debit Plaintiff Griffin's bank account despite his repeated requests to cancel the insurance and to cease debiting his account.[82] Section 1964(a) expressly authorizes the Court to enjoin Defendants from engaging in this behavior and harming consumers in this manner in the future. Dismissal of Plaintiffs' request for declaratory and injunctive relief would be premature.

## CONCLUSION

For these reasons, Defendants' motion should be denied. In the alternative, Plaintiffs request leave to amend the Complaint.[83]

---

[80] *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (noting the distinction between standing to assert a claim and the ability to represent a class pursuant to Rule 23).

[81] *See* Am. Compl. ¶ 104.

[82] *Id.* ¶ 78.

[83] *See* Fed. R. Civ. P. 15(a) (2).

Dated: March 30, 2021         **WHATLEY KALLAS, LLP**

*/s/ Charles Nicholas Dorman*
Charles Nicholas Dorman
Joe R. Whatley Jr.
W. Tucker Brown
2001 Park Place North 1000
Park Place Tower
P.O. Box 10968
Birmingham, AL 35203
Telephone: (205) 488-1200
Facsimile: (800) 922-4851
E-mail:  ndorman@whatleykallas.com
jwhatley@whatleykallas.com
tbrown@whatleykallas.com

Patrick J. Sheehan
101 Federal Street, 19th Floor
Boston, MA  02110
Telephone: (617) 573-5118
Facsimile: (617) 371-2950
Email:  psheehan@whatleykallas.com

**JOHNSTONE CARROLL, LLC**
F. Inge Johnstone
Matthew F. Carroll
2204 Lakeshore Drive
Suite 303
Homewood, AL  35209
Telephone: (205) 383-1809
Facsimile:  (888) 759-3882
Email:  ijohnstone@johnstonecarroll.com

*Attorneys for Plaintiffs*