**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

|  |  |  |
|---|---|---|
| WILLIAM JAMES GRIFFIN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BENEFYTT TECHNOLOGIES, INC., et al. | ) | Case No. 0:20-cv-62371-AHS |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT ASSURANCE IQ, LLC'S
MOTION TO DISMISS**</u>

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.      Plaintiffs Have Standing to Pursue Their RICO Claims Against Assurance ...................... 1

      A.      Plaintiffs Griffin, Lawley and Needham Have Standing to Assert Their
                RICO Claims Against Assurance ........................................................................ 1

      B.      Plaintiffs Allege Facts Sufficient to Establish RICO Standing ............................. 3

            1.   Plaintiffs' Alleged Medical Expenses Are Injuries to "Business or
                Property" ................................................................................................ 3

            2.   Plaintiffs Have Sufficiently Alleged Causation to Support Their RICO
                Claims Against Assurance ..................................................................... 5

II.     Plaintiffs Properly State Claims Against Assurance Under Rule 12(b)(6) ......................... 6

      A.      Plaintiffs Have Sufficiently Alleged That Assurance Has Violated Section
                1962(c) ............................................................................................................ 6

            1.   Plaintiffs Allege that Assurance Committed Two Predicate Acts or Mail
                or Wire Fraud ......................................................................................... 6

            2.   Plaintiffs Allege the Existence of a RICO Enterprise and Assurance's
                Participation In It ................................................................................... 11

      B.      Plaintiffs Have Sufficiently Alleged Conspiracy Claims Against Assurance
                Under 1962(d) ................................................................................................ 13

      C.      Plaintiffs Have Also Alleged Claims Against Assurance for Aiding and
                Abetting a Violation of 1962(c) ........................................................................ 14

      D.      Plaintiffs Properly State Claim Under 1964(a) for Declaratory and Injunctive
                Relief ............................................................................................................ 15

III.    Simple Health and Nationwide Are Not Indispensable Parties ........................................ 15

CONCLUSION ................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010).................................................................................. 6, 7

*Arnold v. Board of Educ. of Escambia County Ala.,*
   880 F.2d 305 (11th Cir.1989)........................................................................................ 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 16

*Belin v. Health Insurance Innovations, Inc.,*No. 0-19-cv-61430-AHS
   (S.D. Fla. Oct.. 22, 2019) (adopted by 2019 WL 9575230)................................. *passim*

*Blevins v. Aksut,*
   849 F.3d 1016 (11th Cir. 2017)....................................................................................... 4

*Boyle v U.S.*,
   556 U.S. 938 (2009) ...................................................................................................... 11

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ........................................................................................................ 7

*Cox v. Admin. U.S. Steel & Carnegie.*,
   17 F.3d 1386 (11th Cir. 1994) ...................................................................................... 14

*Eisen v. Carlisle*,
   417 U.S. 156 (1974) ........................................................................................................ 3

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998)......................................................................................... 15

*Government Employees Ins. Co. v. KJ Chiropractic Center LLC*,
   No. 6:12-cv-1138-ORL-36DAB, 2014 WL 12617566 (M.D. Fla. Mar. 6, 2014) .................. 16

*Hill v. Morehouse Med. Assocs., Inc.*,
   No. 02–144292003, WL 22019936 (11th Cir. Aug. 15, 2003)............................................ 6, 10

*In re Craftmatic Secs. Litig.*,
   890 F.2d 628 (3d. Cir. 1989)....................................................................................... 6, 10

*In re Managed Care Litig.*,
   150 F. Supp. 2d 1330 (S.D. Fla. June 12, 2001) .................................................. 7, 14

*Keller v. Strauss*,
   480 F. App'x 552 (11th Cir. 2012) ............................................................................ 4

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
   507 U.S. 163  (1993) ................................................................................................ 14

*Lott v. Advantage Sales & Mktg. LLC*,
   2:10-CV-00980, 2011 WL 13229682 (N.D. Ala. Jan. 26, 2011) .............................. 3

*Molinos Valle Del Cibao, C. por A. v. Lama*,
   633 F.3d 1330 (11th Cir. 2011) ............................................................................... 17

*Pelletier v. Zweifel*,
   921 F.2d 1465 (11th Cir.1991) .................................................................................. 7

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................................ 13

*Schmuck v. U.S.*,
   489 U.S. 705 (1989) .................................................................................................. 7

*Temple v. Synthes Corp.*,
   498 U.S. 5 (1990) .................................................................................................... 15

*Thomas v. Aetna Inc.*,
   No. 98–2552, 1999 WL 1425366 (D.N.J. June 8, 1999) ........................................... 4

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990) ................................................................................. 6, 10

*Williams v. Mohawk Industries, Inc.*,
   465 F.3d 1277 (11th Cir. 2006) ............................................................................... 12

**Statutes**

18 U.S.C. § 1341 ............................................................................................................. 7

18 U.S.C. § 1961(1) ......................................................................................................... 6

18 U.S.C. § 1962(c) ......................................................................................................... 6

**Rules**

Fed. R. Civ. P. 15(a) (2).........................................................................................................17

Fed. R. Civ. P. 19....................................................................................................................15

Plaintiffs submit this response in opposition to the motion to dismiss (the "Motion") filed by Defendant Assurance IQ LLC ("Assurance") (D.E. 78).

## INTRODUCTION

Plaintiffs' Amended Complaint (D.E. 50) (the "Complaint" or "Am. Compl.") extensively details the fraudulent scheme undertaken by Defendants, including Assurance, and their co-conspirators, including Simple Health and Nationwide.  In its motion to dismiss, Assurance takes a scattershot approach, arguing that Plaintiffs lack standing, that they have failed to adequately allege the elements of their claims under the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), and that they have failed to join purported indispensable parties Simple Health and Nationwide, warranting dismissal.  As set forth below, in *Belin v. Health Insurance Innovations, Inc.*, No. 19-61430-CIV-MORENO/SELTZER, 2019 WL 9575236 (S.D. Fla. Oct.. 22, 2019) (adopted by 2019 WL 9575230) ("*Belin*"), this Court  denied the defendants' motion to dismiss on many of these same grounds and, to the extent Assurance raises new arguments, they all fail.  Accordingly, Assurance's Motion should be denied.

## ARGUMENT

### I.    Plaintiffs Have Standing to Pursue Their RICO Claims Against Assurance.

#### A.    Plaintiffs Griffin, Lawley and Needham Have Standing to Assert Their RICO Claims Against Assurance.

Assurance argues that Plaintiffs Griffin, Lawley and Needham lack standing to pursue claims against Assurance because it is not alleged to have been involved in the sale or marketing of their purported health benefit plans. Mot. at 6.  However, to the contrary, Plaintiffs' Complaint is replete with allegations describing in detail Defendants' fraudulent scheme and Assurance's role in it.  In this regard, among other things, the Complaint alleges that Assurance and the other Defendants jointly created and operated deceptive lead generation websites, including

MyBenefitsKeeper, that Plaintiffs Griffin, Lawley and Needham all used to purchase the limited benefit plans at issue. *See, e.g.,* Am. Compl., ¶¶ 33 ("Defendants direct consumers to access MyBenefitsKeeper online and send out e-mail communications purporting to come from MyBenefitsKeeper and providing links to the online portal"); 106 ("Defendants control and operate the enterprise in at least the following ways: … jointly creating misleading "lead generation" websites [and] providing an online platform for Assurance, Simple Health and Nationwide to quote and sale HII products"); 44-46 (alleging how Assurance and the other Defendants drive traffic to their lead aggregation websites through deceptive misrepresentations and omissions); 70-78 (detailing Plaintiff Griffin's purchase of a limited benefit plan through a deceptive website and the consequences of doing so); 79-87 (detailing Plaintiff Lawley's purchase of a limited benefit plan through a deceptive website); 90 ("As with Griffin and Lawley, HII's agent, using the phone, represented himself as being with MyBenefitsKeeper. On information and belief, he was employed by co-conspirator Assurant [sic]"); 93-96 (detailing Plaintiff Needham's purchase of a limited benefit plan through MyBenefitsKeeper). These allegations alone are more than sufficient to confer standing on Plaintiffs Griffin, Lawley and Needham to assert their RICO claims against Assurance.[1]

Assurance's contention that Plaintiffs Griffin, Lawley and Needham cannot seek class certification in this case "because they fall squarely within the previously certified classes in the *Belin* Action and are bound by any decision rendered therein" (Mot. at 6) is similarly misplaced. As an initial matter, this argument which relates to class certification and has nothing to do with RICO standing, is improperly raised on a motion to dismiss. In any event, although there is

---

[1] The Complaint's additional allegations regarding Assurance's role in Defendants' fraudulent scheme are discussed below.

overlap, Plaintiffs assert different claims than those asserted in *Belin*, including claims for declaratory and injunctive relief. *Compare* D.E. 50, ¶¶ 160-62, Prayer for Relief and *Belin*, D.E. 176 (no claims for injunctive and declaratory relief). *See also* D.E. 33 (Order Transferring Case), at 3-4, 10-11 (summarizing differences between this case and *Belin*). As such, their claims are not subsumed by the claims in *Belin*. Moreover, notice and the opportunity to opt out of the classes certified in *Belin* has not been given, which is necessary in order to bind Plaintiffs Griffin, Lawley and Needham by any decisions rendered in that action. *See Eisen v. Carlisle*, 417 U.S. 156, 176 (1974) ("individual notice to identifiable class members is… an unambiguous requirement of Rule 23"). Thus, at best, Assurance's argument is premature.[2]

**B.    Plaintiffs Allege Facts Sufficient to Establish RICO Standing.**

**1.    Plaintiffs' Alleged Medical Expenses Are Injuries to "Business or Property"**

Plaintiffs allege that Defendants' illegal conduct caused two distinct injuries. First, Plaintiffs allege that they purchased insurance and paid fees and premiums they would not have paid absent Defendants' misrepresentations and omissions. Am. Compl. ¶¶ 68, 101, 147, 152, 158. Second, Plaintiffs allege that they incurred unreimbursed medical expenses that would have been covered by comprehensive medical insurance. *Id.* ¶¶ 147, 152, 158. Assurance argues that because these alleged injuries arise from personal injuries or medical conditions, they do not qualify as injuries to "business or property," which are required to confer standing under RICO. Mot. at 8.

---

[2] Assurance's citation to *Lott v. Advantage Sales & Mktg. LLC*, 2:10-CV-00980, 2011 WL 13229682 (N.D. Ala. Jan. 26, 2011), is unavailing. *Lott* involved a motion to dismiss collective action claims brought under the Fair labor Standards Act pursuant to the "first to file" rule where a broader class had been certified in another district and opt-in notices had already been sent to class members. *Id.*, at *1 n. 1. The court found that "[f]or potential plaintiffs to receive duplicative opt-in notices regarding the same claims against the same defendant in different federal courts would be confusing and wasteful." *Id.*, at *6. As noted above, this case involves broader claims brought on behalf of broader classes than those at issue in *Belin*, is not a collective action and does not require that duplicative class notices be provided. *Lott* is therefore completely inapposite.

*Blevins v. Askstu*, 849 F.3d 1016, 1021 (11th Cir. 2017), which Assurance itself relies upon, is dispositive on this point.  The plaintiffs in *Blevins* alleged a scheme whereby a physician would falsely tell a patient he or she needed heart surgery, the physician would perform the surgery at one of the defendants' facilities, and the defendants would bill the patient for the unnecessary procedure.[3] The defendants argued, as Assurance does here, that the plaintiffs' injuries did not constitute injuries to business or property because they arose out of personal injuries and the Magistrate agreed.[4]  However, on appeal the Eleventh Circuit roundly rejected this argument:

> Plaintiffs seek to recover damages under § 1964(c) for the amounts they paid for the unnecessary heart procedures. **These injuries do not flow from any personal injuries.** Rather, as in *Ironworkers*, the payments themselves are economic injuries because they were for medically unnecessary procedures.  That Plaintiffs also seek redress for personal injuries under other legal theories does not change the outcome.[5]

Here, as in *Blevins*, Plaintiffs' payments of fees and premiums they would not have paid absent Defendants' misrepresentations and omissions as well as unreimbursed medical expenses do not flow from any personal injuries but are economic injuries that flow directly from Defendants' conduct.

Assurance's attempt to limit *Blevins* to the context of unnecessary medical treatment (Mot. at 8 n.7) is unavailing.  *Blevins* recognizes economic injuries that do not flow from personal injuries constitute injury to business or property.  Unsurprisingly, this Court ruled that such economic injuries conferred RICO standing in *Belin*.  2019 WL 9575236, at *3. These are exactly the type of injuries Plaintiffs allege here.[6]  Plaintiffs have thus alleged injuries establishing RICO standing.

---

[3] *Blevins*, 849 F.3d at 1018.

[4] *Id.*

[5] *Id.* (emphasis added).

[6] Indeed, unlike in *Blevins*, Plaintiffs here do not assert any claims for personal injuries.  For this reason, Assurance's citation to other authorities involving injuries arising out of alleged medical negligence is likewise misplaced.  *See* Mot. at 8 (citing *Keller v. Strauss*, 480 F. App'x 552 (11th Cir. 2012)(asserting claims arising out of side effects suffered from clinical drug trial) and *Thomas*

### 2. Plaintiffs Have Sufficiently Alleged Causation to Support Their RICO Claims Against Assurance.

Assurance argues that Plaintiffs Wilson and Cooper fail to allege any violation of RICO by Assurance that proximately caused their purported injuries.  Mot. at 9-10.  Yet, again, as even Assurance acknowledges, the Complaint plainly alleges Assurance's violations of RICO that led directly to Plaintiff Wilson's and Plaintiff Cooper's injuries.

Specifically, Plaintiff Wilson alleges that in August of 2018, she searched online for health insurance and was contacted by Harmon Burkhart of Assurance, who led her to believe that Assurance could provide a comprehensive health insurance plan.  Am. Compl. ¶ 97; *see also* ¶ 9 (alleging upon information and belief that Assurance marketed this plan).  Plaintiff Wilson further alleges that, in reliance on this misrepresentation, she purchased the insurance and paid premiums for it, only to later learn that Assurance sold her a limited benefit health insurance product that left her with extensive uncovered medical expenses that forced her into bankruptcy.  *Id.* at ¶¶ 98-100.

Similarly, Plaintiff Cooper alleges that, on March 14, 2019, he applied for health insurance though an agent of HII and MyBenefitsKeeper, who, upon information and belief, was employed by Assurance.  *Id.* at ¶¶ 89-90.  Plaintiff Cooper further alleges that, during a telephone conversation that day, the agent represented that he could provide a health plan that would cover 80% of his medical and dental expenses with an out-of-pocket maximum of $2,000.  *Id.* at ¶ 90.  Plaintiff Cooper also alleges that the agent then e-mailed a link to a MyBenefitsKeeper application that he completed in reliance on the agent's representations and which, in turn, resulted in him being enrolled in an Assurance IQ Premium plan, for which he was billed electronically.  *Id.* at ¶ 91.  He also alleges that, when his son broke his arm and required surgery, contrary to the agent's

---

*v. Aetna Inc.*, No. 98–2552, 1999 WL 1425366 (D.N.J. June 8, 1999)(asserting claims arising out of misdiagnosis of breast cancer).

representations, the plan did not pay 80% of the charges, did not cap the out-of-pocket maximum at $2,000 and left him owing over $50,000 in medical bills. *Id.* at ¶ 91.

Although Assurance objects to Plaintiffs Wilson and Cooper making allegations regarding who employed the sales agents to whom they spoke upon information and belief, it is well-settled that even allegations of fraud subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) may be based on such allegations when they relate to factual information peculiarly within a defendant's knowledge or control if accompanied by allegations supporting the belief. *See, e.g., Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *In re Craftmatic Secs. Litig.*, 890 F.2d 628, 645 (3d. Cir. 1989); *Hill v. Morehouse Med. Assocs., Inc.*, No. 02–144292003, WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (unpublished).  The alleged identity of the employer the sales agents in question here -- Assurance -- is precisely this type of information.

**II.      Plaintiffs Properly State Claims Against Assurance Under Rule 12(b)(6).**

**A.      Plaintiffs Have Sufficiently Alleged That Assurance Has Violated Section 1962(c).**

Assurance argues that Plaintiffs have failed to plead both a pattern of racketeering activity and an enterprise under RICO. In doing so, Assurance ignores most of the Complaint.

**1.      Plaintiffs Allege that Assurance Committed Two Predicate Acts or Mail or Wire Fraud.**

Assurance's argument misconstrues both the requirements necessary to establish mail and wire fraud and Plaintiffs' allegations. "Section 1962(c) of the RICO statutes requires that a plaintiff prove that a defendant participated in an illegal enterprise 'through a pattern of racketeering activity.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting 18 U.S.C. § 1962(c)).  In order to show a pattern of racketeering activity, Plaintiffs must allege at least two related predicate acts. *Id.* at 1291. "'Racketeering activity' is defined to include such predicate acts as mail and wire fraud." *Id.* at 1290 (citing 18 U.S.C. § 1961(1)). "Mail

fraud…occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting to do so.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341). *See also Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir.1991)) ("'Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme.'").  "The gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element' even if the mailing itself 'contains no false information.'" *Bridge*, 553 at 647 (quoting *Schmuck v. U.S.*, 489 U.S. 705, 712, 715 (1989)).

As the Court in *Belin* noted, "'[a]llegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule.'" 2019 WL 9575236, at *3 (quoting *In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1347 (S.D. Fla. June 12, 2001)).  As in *Belin*, Plaintiffs "have plead the underlying fraud in significant detail." *Id.* at *4.  Indeed, Plaintiffs have clearly alleged a wide-ranging fraudulent scheme through which Defendants utilized standardized misrepresentations and omissions to defraud Plaintiffs and class members.  Plaintiffs have further alleged that Assurance used the mail and wires in furtherance of this scheme, including in communications with Plaintiffs. Assurance's argument completely ignores the numerous paragraphs of the Complaint setting forth the scheme and the use of the mail and wires in furtherance of that scheme.

As alleged in the Complaint, HII developed, distributed and acted as an administrator of limited benefit health insurance plans and supplemental products. Am. Compl. ¶ 19. However,

contrary to Defendants' marketing claims, these products are not comprehensive health insurance coverage and do not comply with the Affordable Care Act. *Id.* ¶ 22. Plaintiffs allege that Defendants' scheme targeted consumers like Plaintiffs seeking comprehensive medical insurance and the standardized scripts that represented that consumers were, in fact, obtaining comprehensive health insurance. *Id.* ¶¶ 1, 52, 67. Rather than providing comprehensive health insurance, Defendants sold Plaintiffs and other consumers limited benefit plans which did not provide comprehensive coverage, excluding coverage for preexisting conditions and prescription drugs and imposing very low dollar limits on other services and excluding coverage for mental health benefits, maternity benefits, or other essential health benefits. Am. Compl. ¶¶ 1, 23. In addition, the plans do not have networks of healthcare providers that have agreed to their price schedules. *Id.* ¶ 23. The plans have restrictive limits on individual and total benefits. *Id.*

In 2013, in order to implement the scheme, HII recruited and conspired with various marketing companies, including Assurance, to market these health plans and secondary junk products as comprehensive health insurance. *Id.* ¶ 28. As part of this scheme, HII provided the marketing companies, including Assurance, "training, audit and other support, and monitoring." *Id.* ¶ 29. HII also provided "advance commission payments" in order to assist their co-conspirators with the cost of "lead acquisition" and to provide working capital. *Id.* ¶ 30. The Complaint details how HII, along with the marketing companies, created misleading lead generation websites and reviewed, edited and approved fraudulent sale scripts that were used in phone conversations. *Id.* ¶¶ 34(g) and (l), 106(g) and (l). The marketing companies, including Assurance, also used deceptive search engine optimization in pay per click advertising to drive consumers seeking comprehensive health coverage to their websites. *Id.* ¶¶ 42-47.

The Complaint further details how Assurance, Simple Health and Nationwide solicited

sales by phone and took applications, issued coverage, and collected premiums through an Internet portal provided by HII. *Id.* ¶¶ 28, 33, 34(h), 106(h). Following the initial sale of a policy, HII collected payments and provided member support services. *Id.* ¶¶ 31-33. Defendants then distributed high commissions to Assurance, Simple Health and Nationwide. *Id.* ¶ 31, 34(o). As alleged in the Complaint, Defendants engaged in thousands of acts of racketeering activity. *Id.* ¶ 115. Each of these acts was related, had a similar purpose, involved the same or similar participants and methods of commission, had similar results and impacted similar victims, including Plaintiffs and Class members. *Id.* ¶¶ 124-125. Class members relied on the standardized misrepresentations and omissions by purchasing the limited benefit health insurance plans and paying premiums. *Id.* ¶ 68.

Assurance paints a misleading picture regarding the allegations related to the individual Plaintiffs, including those who purchased limited benefit plans through Assurance, attempting to divorce the individual Plaintiffs' allegations from Plaintiffs' well-pled allegations regarding the fraudulent scheme. *See* Mot. at 11-12. As set forth in the Complaint, Plaintiffs were victims of this scheme. *See also Belin*, 2019 WL 9575236, at *5 (finding the "Amended Complaint also alleges with particularity how the scheme was applied personally to each named Plaintiff"). Contrary to Assurance's contentions, the Complaint alleges the specific misrepresentations made to Plaintiffs that led each of them to believe they were obtaining comprehensive health insurance, showing how the salesperson spoke to them, followed the script and represented to them that they were, in fact buying comprehensive health insurance.

As discussed above, Plaintiff Wilson was contacted by Harmon Burkhart of Assurance. *Id.* ¶ 97. Based on Burkhart's representations, Plaintiff Wilson believed she was purchasing comprehensive health insurance. *Id.* Instead, she was sold a limited benefit health insurance

product. *Id.* ¶¶ 9, 97. She agreed to purchase the insurance and has paid the monthly premiums in reliance on the representations that she was receiving comprehensive health insurance. *Id.* ¶ 98. However, after incurring substantial medical expenses, she found that she had instead been sold a limited benefit health insurance product. *Id.* ¶ 100. The uncovered medical expenses forced her into bankruptcy. *Id.*

Likewise, Plaintiff Cooper was told he was buying comprehensive medical insurance but instead was sold a short term health insurance product called Assurance IQ. *Id.* ¶ 10. More specifically, he was told the plan involved a network and a PPO and would cover eighty percent of his medical and dental expenses and that he had a $2,000 out-of-pocket maximum. *Id.* ¶ 90. Plaintiff Cooper has alleged that, upon information and belief, this representative was employed by Assurance. *Id.* Given that Assurance was a marketing partner of HII and given that he was sold an Assurance policy, his belief that the representative is employed by Assurance is obviously well-founded. *Id.* ¶¶ 10, 28, 90.[7]  Despite Assurance's misrepresentations, the plan Plaintiff Cooper purchased was not comprehensive and did not pay 80% or cap his out-of-pocket cost at $2,000. *Id.* ¶ 92. Rather than receiving the comprehensive health insurance promised, Plaintiff Cooper was left owing $50,000. *Id.*

Plaintiffs have alleged that Assurance's misrepresentations were made during phone calls with Assurance representatives. Despite Assurance's argument to the contrary (Mot. at 12), the fact that Plaintiffs have not alleged the physical location of the representatives when they made these calls is not fatal to Plaintiffs' fraud claims.

---

[7] As noted above, because facts regarding the sales agent's employment are in the sole custody and control of Defendants, Plaintiffs are entitled to some leeway under Rule 9(b) with regard to the representative's employment status. *See Wexner*, 902 F.2d at 172; *In re Craftmatic Secs. Litig.*, 890 F.2d at 645; *Hill*, WL 22019936, at *3.

Plaintiffs have alleged that Assurance's acts of concealment and failures to disclose were knowing and intentional and made for the purpose of deceiving Plaintiffs and class members and to obtain their property. *Id.* ¶ 111. Notably, Plaintiffs are not required to allege Assurance's intent or knowledge with specificity under Federal Rule of Civil Procedure 9(b). Plaintiffs have sufficiently alleged the fraudulent scheme and Assurance's participation in sufficient detail to satisfy Rule 9(b) and to allow Assurance to defend itself.

### 2. Plaintiffs Allege the Existence of a RICO Enterprise and Assurance's Participation in It.

Plaintiffs have alleged an association-in-fact enterprise which is "simply a continuing unit that functions with a common purpose." *Boyle v U.S.*, 556 U.S. 938, 948 (2009). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. Plaintiffs have sufficiently pled each of these elements.

The enterprise, which functioned for more than five years, originated in 2013 when HII recruited and reached agreement with Assurance, Simple Health, Nationwide and others to market limited benefit non-ACA compliant policies, discount cards, association membership and accidental health insurance as comprehensive health insurance. Am. Compl. ¶ 104, 28. Such a distribution and marketing system was necessary to sell HII's limited benefit plans at enormously inflated prices. *Id.* ¶ 106. As set forth in the Complaint, the members of the enterprise had the common purpose of deceiving Plaintiffs and Class members in order to obtain their property for their benefit. *Id.* ¶ 111. Plaintiffs have alleged that Assurance knowingly and intentionally participated in the fraudulent scheme. *Id.* Plaintiffs have also alleged numerous interactions between HII and the Marketing Companies, including Assurance. *See, e.g.,* Am. Compl. ¶ 106 (b) recruitment of Assurance; (e) paying Assurance high commissions; (f) funding Assurance's

11

operations; (g) jointly creating misleading "lead generation" websites; (h) providing an on-line platform; (i) recruiting and training Assurance agents; (j) allowing Assurance agents to register their licenses through HII; (k) monitoring sales calls; (l) reviewing, editing, and approving fraudulent sales scripts.

Plaintiffs' enterprise allegations are indistinguishable from those the Eleventh Circuit found sufficient in *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1284 (11th Cir. 2006) where the plaintiffs alleged an association-in-fact enterprise comprised of Mohawk and third-party temp agencies and recruiters and "alleged that Mohawk and third-party temp/agencies/recruiters…conspired to violate federal immigration laws, destroy documentation, and harbor illegal workers." The complaint alleged a that members' common purpose was "reaping a large economic benefit from Mohawks' employment of illegal workers." *Id.* In addition, the plaintiffs pled the following interactions: "[e]ach recruiter is paid a fee for each worker it supplies to Mohawk, and some of those recruiters work closely with Mohawk to meet its employment need by offering a pool of illegal workers who can be dispatched to a particular Mohawk facility on short notice as the need arises." *Id.* Despite the absence of any factual allegations linking the various third party recruiters, the Eleventh Circuit nonetheless found that the plaintiffs' complaint "sufficiently alleged an 'enterprise' under RICO; that is an association-in-fact between Mohawk and third-party recruiters." *Id.* In reaching its determination, the Court reiterated that the Eleventh Circuit "has never required anything other than a 'loose or informal' association of distinct entities." *Id. See also Belin*, 2019 WL 9575236, at *7 (finding the plaintiffs had sufficiently alleged the common purpose and relationships between members of the enterprise). Plaintiffs have thus sufficiently alleged an association-in-fact enterprise and Assurance's role in it.

Assurance's only argument as to why, at a minimum, HII and Assurance would not constitute an association-in-fact enterprise is that "Assurance's relationship with HII here is nothing more than a 'common business relationship.'" Mot. at 13. Yet, Plaintiffs' have alleged that the relationship was not an arms-length business agreement. For example, Plaintiffs have alleged that HII trained Assurance agents and that those agents utilized standardized, fraudulent sales scripts that were reviewed, edited and approved by HII. Am. Compl. ¶ 106 (i) and (l).  Plaintiffs have also alleged that Assurance participated in the fraud with knowledge and intent and for the purpose of deceiving consumers for Assurance's financial benefit. *Id.* at ¶ 111.

Assurance's argument that Plaintiffs have not sufficiently alleged that Assurance operated or managed the enterprise also fails because Assurance misconstrues the applicable law. Plaintiffs are not required to allege that Assurance had complete or even "primary responsibility for the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Instead, Plaintiffs must allege that Assurance played "*some* part in directing the enterprise's affairs." *Id.* (emphasis in original). Plaintiffs' allegations easily meet this test. For example, Plaintiffs have alleged that Assurance participated in or directed the affairs of the enterprise by using standardized, fraudulent sales scripts to induce consumers to buy insurance products by misrepresenting that the consumers were receiving comprehensive health insurance. Am. Compl. ¶ 106 (i) and (l).

### B.      Plaintiffs Have Sufficiently Alleged Conspiracy Claims Against Assurance Under 1962(d).

As previously discussed, Plaintiffs have alleged a claim under § 1962(c). Also, despite Assurance's argument to the contrary, Plaintiffs have provided sufficient details regarding the conspiracy,[8] including the participants, the goals, and the acts taken by Defendants and co-

---

[8] RICO conspiracy claims are not subject to the requirements of Rule 9(b). *Arnold v. Board of Educ. of Escambia County Ala.,* 880 F.2d 305, 366 (11th Cir.1989), *overruled on other grounds*

conspirators in furtherance of the conspiracy. *See* Am. Compl. ¶¶ 28-68. Plaintiffs have alleged

that HII and the marketing companies, including Assurance, agreed to sell limited benefit plans as

comprehensive health insurance, that they had a common purpose of deceiving Plaintiffs and Class

members in order to obtain their property, that each participant's conduct was knowing and

intentional, and that, in furtherance of this agreement, Assurance committed at least two predicate

acts. *Id.* ¶¶ 28, 111, 90, 97.

> **C.**    **Plaintiffs Have Also Alleged Claims Against Assurance for Aiding and Abetting a Violation of 1962(c).**

Assurance's arguments that Plaintiffs have not stated a claim for aiding and abetting a

violation of Section 1962(c) all fail.[9] First, as set forth above, Plaintiffs have pled viable claims

for violations of Section 1962(c). Plaintiffs have likewise alleged that Assurance aided and abetted

HII's violations and did so with knowledge and intent. Am. Compl. ¶¶ 90, 97, 106, 111. Finally,

the Court has previously rejected Assurance's argument that no private right of action exists for

aiding and abetting a RICO violation:

> Furthermore, although Defendants suggest that it is an open question whether RICO aiding and abetting liability exists in the Eleventh Circuit, Motion at 15 (DE [27] ), this Court has previously acknowledged controlling precedent holding that it does. See In re Managed Care Litig., 135 F. Supp. 2d 1253, 1267 (S.D. Fla. 2001) (Moreno, J.) (citing Cox v. Admin. U.S. Steel & Carnegie, 17 F.3d 1386, 1410 (11th Cir.1994)).

*Belin*, 2019 WL 9575236, at *9.  Plaintiffs have therefore properly stated claims against Assurance

for aiding and abetting a violation of Section 1962(c).

---

*by, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, (1993) ("[A] plaintiff must simply plead general facts from which a conspiracy can be inferred to withstand a 12(b)(6) motion.")
[9] *See Belin,* 2019 WL 9575236, at *9 (rejecting Defendants' arguments regarding dismissal of the Plaintiffs' aiding and abetting claims).

### D.  Plaintiffs Properly State a Claim Under 1964(a) for Declaratory and Injunctive Relief.

As discussed above, Plaintiffs have properly alleged RICO violations. Accordingly, their requests for injunctive and declaratory relief are valid. 18 U.S.C. §1964(a). Plaintiffs have established standing to assert RICO claims, regardless of whether they are likely to be harmed in future by Defendants' conduct. Therefore, whether Plaintiffs may seek injunctive relief on behalf of absent Class members is a question to be resolved under Rule 23, not a motion to dismiss.[10] Plaintiffs allege facts that show class members will suffer future harm absent injunctive relief. Specifically, Plaintiffs allege an ongoing scheme to deceive consumers, through wire and mail fraud, into purchasing short-term health insurance that in fact provides little or no health coverage when they become ill or injured, which will result in future untreated illnesses or injuries unless Defendants are enjoined.  Moreover, Defendants continue to collect premiums and to profit from their fraudulent scheme. *See* Am. Compl. ¶¶ 104, 78. Section 1964(a) expressly authorizes the Court to enjoin Defendants from engaging in this behavior and harming consumers in this manner in the future. Dismissal of Plaintiffs' request for declaratory and injunctive relief would be premature.

### III.  Simple Health and Nationwide Are Not Indispensable Parties.

As the Supreme Court has observed, notwithstanding Rule 19, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990); *see also* Fed. R. Civ. P. 19 advisory committee's note (stating that Rule 19 "is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another

---

[10] *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (noting the distinction between standing to assert a claim and the ability to represent a class pursuant to Rule 23).

with like liability"). Accordingly, courts routinely refuse to dismiss complaints asserting conspiracy claims under RICO for failure to name all participants in the unlawful scheme as defendants. *See, e.g.*, *Government Employees Ins. Co. v. KJ Chiropractic Center LLC*, No. 6:12-cv-1138-ORL-36DAB, 2014 WL 12617566, \*7 (M.D. Fla. Mar. 6, 2014) (refusing to dismiss RICO conspiracy claims arising out of insurance fraud scheme for failure to name co-conspirator insureds as defendants because even "assuming that the unnamed insureds were active participants in the fraudulent scheme, their presence is not critical to the disposition of important issues in the litigation") (citations and quotations omitted). As it is well-settled that Rule 19 does not require joinder of all joint tortfeasors, such as all participants in an alleged RICO conspiracy, Assurance's motion to dismiss for failure to join Simple Health and Nationwide pursuant to Rule 12(b)(7) should be summarily denied.

In an attempt to circumvent this controlling authority, Assurance baldly claims that it "is not a joint tortfeasor with Simple Health or Nationwide who could conceivably share any liability" Mot. at 19. However, as detailed above, Plaintiffs have alleged in detail that Assurance has participated in an unlawful conspiracy including both Simple Health and Nationwide to market limited health benefit plans as comprehensive health insurance plans that involved, among other things, the joint creation of deceptive lead generation websites through which they lured consumers to purchase their limited benefit plans. Am. Compl., at ¶¶ 34, 106, 112. These allegations, which explicitly state that Assurance is a joint tortfeasor with its co-conspirators, including Simple Health and Nationwide, must be taken as true for purposes of ruling on Assurance's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[when there are well-pleaded factual allegations, a court should assume their veracity.").

Critically, Assurance, as the moving party, bears the burden to show that Simple Health

and Nationwide are indispensable parties. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011). Weighed against Plaintiffs' detailed allegations of a RICO conspiracy among HII, Assurance, Simple Health, Nationwide and others, it is plain that Assurance's unsupported assertion that it is not a joint tortfeasor with Simple Health and Nationwide is insufficient to carry its burden.[11] As Assurance has failed to show that Simple Health and Nationwide are required parties, dismissal is not warranted.

## CONCLUSION

For these reasons, Assurance's motion to dismiss should be denied. In the alternative, Plaintiffs respectfully request leave to amend the Complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Dated: June 11, 2021

**WHATLEY KALLAS, LLP**

 */s/ Charles Nicholas Dorman*
Charles Nicholas Dorman
Joe R. Whatley Jr.
W. Tucker Brown
2001 Park Place North 1000
Park Place Tower
P.O. Box 10968
Birmingham, AL 35203
Telephone: (205) 488-1200
Facsimile: (800) 922-4851
E-mail: ndorman@whatleykallas.com
jwhatley@whatleykallas.com
tbrown@whatleykallas.com


Patrick J. Sheehan
101 Federal Street, 19th Floor Boston,
MA 02110
Telephone: (617) 573-5118
Facsimile: (617) 371-2950
Email: psheehan@whatleykallas.com

---

[11] For the reasons set forth in Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Complaint (D.E. 66), the Complaint should not be dismissed as a shotgun pleading.

**JOHNSTONE CARROLL, LLC**
F. Inge Johnstone
Matthew F. Carroll
2204 Lakeshore Drive
Suite 303
Homewood, AL  35209
Telephone: (205) 383-1809
Facsimile:  (888) 759-3882
Email:  ijohnstone@johnstonecarroll.com

*Attorneys for Plaintiffs*