# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM JAMES GRIFFIN, et al., </br></br>    Plaintiffs, </br></br>v. </br></br>BENEFYTT TECHNOLOGIES, INC., et al., </br></br>    Defendants. | ) </br>) </br>) </br>) </br>) </br>) Case No. 0:20-cv-62371-AHS </br>) </br>) </br>) </br>) </br>) |

## DEFENDANTS BENEFYTT TECHNOLOGIES, INC.'S AND HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC'S MOTION TO STAY DISCOVERY

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants Benefytt Technologies, Inc. (formerly known as Health Insurance Innovations, Inc.) and Health Plan Intermediaries Holdings, LLC (collectively, the "HII Defendants"), respectfully request that this Court enter an Order staying discovery in this matter until: (1) the entry of an order on final class action settlement approval in *Belin v. Health Insurance Innovations, Inc.*, No. 0:19-cv-61430-AHS, currently pending in this Court; and (2) the entry of order on class certification in *Ketayi v. Health Enrollment Group*, No. 3:20-cv-01198-GPC-KSC, currently pending in the United States District Court for the Southern District of California.

The alleged facts, claims, and proposed class in this case overlap substantially with those in *Belin* and *Ketayi*, and decisions on settlement and class certification in those cases will significantly impact the scope of the putative class in this case. Granting the stay until these issues can be resolved will promote judicial economy and prevent the HII Defendants from potentially having to bear the undue and unnecessary burden of litigating three nearly identical cases at the same time.

**BACKGROUND**

This case is one of three nearly identical lawsuits currently pending against the HII Defendants.

I.   **The *Belin* Litigation**

On June 7, 2019, the plaintiffs in *Belin v. Health Insurance Innovations, Inc.*, No. 0:19-cv-61430-AHS, filed their complaint against the HII Defendants in this Court. *Belin* Dkt. 1. The *Belin* plaintiffs claim to have purchased limited benefit health insurance or ancillary medical discount plans that were allegedly developed, distributed, or serviced by the HII Defendants. *See Belin* Dkt. 176 ("*Belin* Compl.") ¶¶ 1, 3, 53. They further claim that these plans were marketed by distributors, including Simple Health Plans, LLC ("Simple Health") and Nationwide Health ("Nationwide"). *See id.* ¶ 18.

Relying heavily on allegations asserted in an action filed by the Federal Trade Commission against Simple Health, *see id.* ¶¶ 2, 240-44, the *Belin* plaintiffs allege that the HII Defendants, Simple Health, and Nationwide engaged in a scheme to mislead consumers into believing that their limited benefit indemnity plans were comprehensive health insurance when they were not. *See, e.g., id.* ¶¶ 1-2. The HII Defendants are alleged to have supported Simple Health and Nationwide by training sales agents, approving of sales scripts, providing customer service, collecting monthly premiums, and distributing commissions. *Id.* ¶¶ 3, 203-21. The *Belin* plaintiffs assert claims for a violation of federal RICO, conspiracy to violate RICO, and aiding and abetting a violation of RICO. *Id.* ¶¶ 269-94.

On February 2, 2021, the Court certified a class in *Belin* consisting of all individuals who purchased limited benefit indemnity plans and/or ancillary products administered by the HII Defendants, such as medical discount plans, through Simple Health or Nationwide Health from

June 7, 2015 through September 27, 2021. *See Belin* Dkt. 208; *see also Belin* Compl. ¶ 258. The parties subsequently executed a class action settlement agreement, *Belin* Dkt. 264, which the Court preliminarily approved on September 27, 2021, *Belin* Dkt. 265. The *Belin* plaintiffs have moved for final approval of the class settlement, *Belin* Dkt. 270, and a final settlement approval hearing is set for March 31, 2022. To date, no objections to the settlement have been filed. *See generally Belin* Docket; *see also Belin* Dkt. 270 at 2 ("Indeed, not a single one of the more than 230,000 Settlement Class Members has objected to the Settlement[.]").

## II.     The *Ketayi* Litigation

On June 26, 2020, additional plaintiffs filed yet another nearly identical lawsuit, *Ketayi v. Health Enrollment Group*, No. 3:20-cv-01198-GPC-KSC, against eight defendants, including the HII Defendants. Relying heavily on the FTC's action against Simple Health, the *Ketayi* plaintiffs, like those in *Belin*, allege that the HII Defendants misled customers into purchasing limited benefit indemnity plans with the knowledge that they were not comprehensive insurance coverage. *See, e.g., Ketayi* Dkt. 134 ("*Ketayi* TAC") ¶ 2. The *Ketayi* plaintiffs similarly assert several claims under the federal civil RICO statute. *Id.* ¶¶ 232-59. The proposed class definition in *Ketayi*, however, more broadly includes "[a]ll persons within the United States who [four years prior to the filing of the first complaint until the class notice is disseminated] purchased a limited benefit plan or medical discount plan developed, marketed, advertised, sold, underwritten or administered in any way by Defendants"—including, of course, the HII Defendants. *Id.* ¶¶ 161-62. After several rounds of motion to dismiss briefing, the HII Defendants answered the Third Amended Complaint on January 7, 2022. Dkt. 194. The parties are now actively engaged in discovery.

3

**III.    This Lawsuit**

On May 5, 2020, Plaintiffs filed their initial complaint in the Northern District of Alabama, alleging that they purchased health insurance plans through Simple Health and Nationwide that were developed, distributed, or serviced by the HII Defendants. *See* Dkt. 1. Drawing heavily from the FTC's action against Simple Health and the plaintiffs' allegations in *Belin*, and similar to the allegations in *Ketayi*, Plaintiffs allege that the HII Defendants participated in a scheme to mislead consumers into believing that their limited benefit indemnity plans and short-term medical plans were comprehensive health insurance. *See, e.g., id.* ¶¶ 3, 23, 47. Like the *Belin* plaintiffs, Plaintiffs further claim that the HII Defendants supported Simple Health and Nationwide by offering them training, monitoring their sales calls, approving their sales scripts, providing customer service, collecting monthly premiums, and distributing commissions, among other things. *Id.* ¶ 34. And similar to both the *Belin* and *Ketayi* plaintiffs, Plaintiffs asserted claims for a violation of the federal RICO statute and conspiracy to violate RICO. *Id.* ¶¶ 118-27.

On July 1, 2020, the HII Defendants moved to dismiss the initial complaint, Dkt. 18, and on August 14, 2020, the HII Defendants moved to transfer or stay the case to the Southern District of Florida, in light of the fact that *Belin* was already pending in this Court. Dkt. 27. Three days later, on August 17, 2020, Plaintiffs moved for leave to amend their complaint. Dkt. 28. While the motion to dismiss and the motion for leave to amend were pending, the Northern District of Alabama granted the HII Defendants' motion to transfer or stay and transferred the case to this Court. Dkt. 33.

On February 9, 2021, the Court granted Plaintiffs' motion for leave to amend. Dkt. 49. While the substantive allegations and claims were largely unchanged from the original complaint, the Amended Complaint added RICO enterprise and conspiracy claims against AssuranceIQ and

named AssuranceIQ as a new Defendant. Dkt. 50 ("*Griffin* Am. Compl."). Correspondingly, Plaintiffs now seek to represent a class of consumers "who, from May 5, 2016, to the date of certification purchased a health insurance plan from Defendants through Assurance, Simple Health or Nationwide." *Id.* ¶¶ 4, 131.

## LEGAL STANDARD

Federal Rules of Civil Procedure Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." District courts have broad discretion to stay discovery upon a showing of "reasonableness and good cause." *Chevaldina v. Katz*, No. 17-22225-CIV-WILLIAMS/TORRES, 2017 WL 6372620, at *2 (S.D. Fla. Aug. 28, 2017). "The discretion to stay the matter has also been based on 'the district court['s] broad general discretion to stay proceedings as an incident to its power to control its docket.'" *Florida ex rel. Cucinotta v. Credit Suisse Sec. (USA) LLC*, No. 12-21223-Civ-COOKE/TURNOFF, 2013 WL 12247770, at *3 (S.D. Fla. Mar. 19, 2013) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). Indeed, "[i]n certain matters, a stay may 'promote judicial economy, reduce confusion and prejudice, and prevent possible inconsistent resolutions.'" *Cucinotta*, 2013 WL 12247770, at *3 (quoting *Axa Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1330, 1346 (S.D. Fla. 2009)). So long as the stay is not indefinite or excessive, district courts have full discretion to grant a stay pending resolution of proceedings in another case. *See Allmon v. U.S.*, No. 3:06CV257/RV/MD, 2006 WL 1401921, at *1 (N.D. Fla. Apr. 10, 2006). Courts can—and often do—exercise this discretion to stay a putative class action while an overlapping class action remains pending. *See, e.g., Arkin v. Smith Med. Partners, LLC*, No. 8:19-cv-1723-T-36AEP, 2020 WL 1666158, at *2-3 (M.D. Fla. Apr. 3, 2020) (granting a

limited stay of discovery while a motion for preliminary approval remained pending in a similar class action lawsuit to "avoid duplicative discovery efforts and related, overlapping issues").

## ARGUMENT

The Court should grant a stay in this matter in light of *Belin* and *Ketayi*. This case is largely subsumed by the two other cases, and permitting this litigation to proceed would waste judicial resources and impose an undue burden on the HII Defendants.

### I.     This Case Is Nearly Identical to, and Largely Subsumed by, *Belin* and *Ketayi*

The alleged facts and claims in this case substantially overlap with those in *Belin* and *Ketayi*. Each of the three cases centers on allegations that the HII Defendants should be held liable for falsely and misleadingly marketing insurance products, including limited benefit indemnity plans, as comprehensive health insurance. *See, e.g.*, *Griffin* Am. Compl. ¶¶ 1, 4; *Belin* Compl. ¶¶ 1-2; *Ketayi* TAC ¶ 2. The plaintiffs in all three cases assert claims for civil RICO violations, conspiracy to violate RICO, and aiding and abetting RICO violations. *Griffin* Am. Compl. ¶¶ 145-59, *Belin* Compl. ¶¶ 269-94, *Ketayi* TAC ¶¶ 232-59. And the complaints in all three cases mirror the allegations in the FTC's action against Simple Health, asserting nearly identical allegations about: the substance of the purported misrepresentations; the use of deceptive sales scripts by call center agents; the sales process used by the call center agents; the purported impact of the misrepresentations on consumers; and the HII Defendants' supposed role in the alleged scheme. *See, e.g.*, *Griffin* Am. Compl. ¶¶ 2, 3, 29-32, 34, 43, 43-65, 52-53; *Belin* Compl. ¶¶ 2, 3, 203-21, 240-44; *Ketayi* TAC ¶¶ 2, 8, 10, 61, 73, 116, 124, 126-34, 139.

Additionally, the putative class in this case is largely subsumed by the class in *Belin* and the proposed class in *Ketayi*. The certified class in *Belin* includes "[a]ll individuals who purchased the HII Defendants' limited benefit indemnity plans or ancillary products such as medical discount

plans" through Simple Health or Nationwide from June 7, 2015 to September 27, 2021. *See Belin* Compl. ¶ 258. The proposed class in *Ketayi*, which itself is largely subsumed by the *Belin* class, is even broader, encompassing "[a]ll persons . . . who purchased a limited benefit plan or medical discount plan developed, marketed, advertised, sold, underwritten or administered in any way" by the HII Defendants (or any of the other defendants named in that case). *Ketayi* TAC ¶ 161. Because the class definition here covers individuals who "purchased a health insurance plan from Defendants through Assurance, Simple Health or Nationwide," nearly the entire putative class is subsumed by the certified and proposed classes in *Belin* and *Ketayi*, respectively. The *Belin* class includes purchasers of limited benefit indemnity plans and ancillary products purchased through Simple Health and Nationwide, and the putative *Ketayi* class includes purchasers of limited benefit indemnity plans and medical discount plans purchased from any distributor allegedly associated with the HII Defendants—which would include Assurance, Simple Health, and Nationwide. The chart below demonstrates this substantial overlap.

|  | *Belin* | *Ketayi* | *Griffin* |
|---|---|---|---|
| **Distributors Included in Class Definition** | Simple Health, Nationwide | Any distributor allegedly associated with the HII Defendants (including Simple Health, Nationwide, and Assurance) | Simple Health, Nationwide, Assurance |
| **Plans Covered in Class Definition** | Limited benefit indemnity plans and ancillary products, including medical discount plans | Limited benefit indemnity plans and medical discount plans | "Health insurance plan[s]" (including limited benefit indemnity plans and medical discount plans) |

In light of this overlap, the only putative class members here who would *not* be included in the *Belin* class or the proposed *Ketayi* class are individuals who purchased an "insurance health

7

plan"—*other than the limited benefit indemnity plans, ancillary plans, and medical discount plans* already covered in *Belin* and *Ketayi*—through Assurance, Simple Health, or Nationwide. If there are any such individuals, there are not many. Plaintiffs never specify what "insurance health plan" means in the context of their proposed class definition, but the only other plans referenced in the Amended Complaint are short-term medical plans, which appear to be little more than an after-thought. Indeed, all of the key substantive allegations in this case—*e.g.*, the use of "misleading search engine and lead generation websites," the sale of plans by call centers agents, the use of a "uniform and deceptive" sales script that misled consumers into believing "they were purchasing comprehensive health insurance," and the use of a "sham 'verification' process" to finalize their sales—are drawn directly from the FTC's allegations against Simple Health, which concern only limited benefit indemnity plans and related ancillary products like medical discount plans. *See* Am. Compl. ¶¶ 43-68; *see* Complaint For Permanent Injunction and Other Equitable Relief, *FTC v. Simple Health Plans, LLC et al.*, No. 0:18-cv-62593-DPG (S.D. Fla. filed Oct. 29, 2018), Dkt. 1 ¶ 16 (defendants enrolled customers in "(1) limited benefit plans, also known as limited benefit indemnity plans or hospital indemnity plans; and (2) medical discount and wellness program memberships"). This narrow, hypothetical group of individuals who might have claims that are not subsumed by *Belin* or *Ketayi* does not justify the waste of judicial and litigant resources that litigating this case now would require.

**II.    The Court Should Grant a Stay to Promote Efficiency and Prevent an Undue Burden**

There is no need for the same case to consume the resources of three different federal courts. Nor is there any justification for requiring the HII Defendants to expend the substantial resources necessary to litigate substantially the same case three different times. In the absence of a stay, the prospect of inefficiency and undue burden is obvious: the HII Defendants would be

required to respond to written discovery requests, participate in depositions, and engage in motions practice for a third time on substantially the same topics, and this Court would be the third court to oversee that process. To make matters worse, since *Belin* and *Ketayi* largely subsume this case, much of this work may very well prove to have been unnecessary, depending on the decisions on settlement and class certification in those cases.

Importantly, the HII Defendants do not request an indefinite stay. The final approval hearing for the proposed settlement in *Belin* is set for March 31, 2022. And the *Ketayi* plaintiffs' motion for class certification is due by June 24, 2022. A stay of this case until both of these matters are adjudicated will likely last a matter of months—not years—at which point the Court and the parties will be able to evaluate what claims remain in this case and tailor discovery and further proceedings appropriately.

Although a modest stay of this case would best serve efficiency and avoid undue burdens, to the extent the Court is disinclined to stay the case completely, a partial stay that covers only the plans already litigated in *Belin* and *Ketayi* (*i.e.*, limited indemnity plans, ancillary products, and medical discount plans) would at least avoid litigation on the most clearly duplicative issues, while permitting Plaintiffs to proceed with their claims as they relate to short-term medical plans. Accordingly, the HII Defendants respectfully request a stay of the entire case—or in the alternative, a partial stay of claims as they relate to limited indemnity plans, ancillary products, and medical discount plans—until: (1) the entry of an order on final class action settlement approval in *Belin*; and (2) the entry of order on class certification in *Ketayi.*

## **CONCLUSION**

For the foregoing reasons, the HII Defendants respectfully request that the Court grant their motion to stay this case.

Dated: March 24, 2022

                                                **KING & SPALDING LLP**

By: */s/ Val Leppert*
    Val Leppert (Fla. Bar No. 97996)
    200 S. Biscayne Blvd., Suite 4700
    Miami, Florida 33131
    Telephone: (404) 572-4600
    Facsimile: (404) 572-5100
    vleppert@kslaw.com

    David L. Balser (*Pro Hac Vice*)
    Zachary A. McEntyre (*Pro Hac Vice*)
    Timothy H. Lee (*Pro Hac Vice*)
    Spencer M. Diamond (Fla. Bar No. 97996)
    Elliott Foote (*Pro Hac Vice*)
    1180 Peachtree Street, NE, Suite 1600
    Atlanta, Georgia 30309
    Telephone: (404) 572-4600
    Facsimile: (404) 572-5100
    dbalser@kslaw.com
    zmcentyre@kslaw.com
    tlee@kslaw.com
    sdiamond@kslaw.com
    efoote@kslaw.com

    *Counsel for Benefytt Technologies Inc. (f/k/a Health Insurance Innovations Inc.) and Health Plan Intermediaries Holdings LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 24, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on the following counsel or parties of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF:

Charles Nicholas Dorman
Joe R. Whatley, Jr.
W. Tucker Brown
**WHATLEY KALLAS, LLP**
2001 Park Place North
1000 Park Place Tower
P.O. Box 10968
Birmingham, AL 35203
Telephone: (205) 488-1200
Facsimile: (800) 922-4851
ndorman@whatleykallas.com
jwhatley@whatleykallas.com
tbrown@whatleykallas.com
*Counsel for Plaintiffs*

Patrick J. Sheehan
**WHATLEY KALLAS, LLP**
101 Federal Street, 19th Floor
Boston, MA 02110
Telephone: (617) 573-5118
Facsimile: (617) 371-2950
psheehan@whatleykallas.com
*Counsel for Plaintiffs*

F. Inge Johnstone
Matthew F. Carroll
**JOHNSTONE CARROLL, LLC**
2204 Lakeshore Drive Suite 303
Homewood, AL 35209
Telephone: (205) 383-1809
Facsimile: (888) 759-3882
ijohnstone@johnstonecarroll.com
*Counsel for Plaintiffs*

Catherine B. Schumacher
Vincent A. Sama
**SEYFARTH SHAW LLP**
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Telephone: (212) 218-3375
cshumacher@seyfarth.com
vsama@seyfarth.com
*Counsel for Defendant Assurance IQ, LLC*

Martha Rosa Mora
**AVILA RODRIGUEZ HERNANDEZ MENA & FERRI**
2525 Ponce de Leon Boulevard
Penthouse 1225
Coral Gables, FL 33134
Telephone: (305) 779-3567
Facsimile: (305) 779-3561
mmora@arhmf.com
*Counsel for Defendant Assurance IQ, LLC*

*/s/ Val Leppert*
Val Leppert

*Counsel for Benefytt Technologies Inc. (f/k/a Health Insurance Innovations Inc.) and Health Plan Intermediaries Holdings LLC*