**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| WILLIAM JAMES GRIFFIN, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) Case No. 0:20- cv-62371-AHS |
| BENEFYTT TECHNOLOGIES, INC., et al., | ) |
|  | ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT, CERTIFICATION OF SETTLEMENT CLASSES, APPROVAL OF CLASS NOTICE AND SCHEDULING OF A FAIRNESS HEARING, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs William James Griffin, Ashley Lawley, William "Jeff" Cooper, Sandra Wilson and Vicki Needham ("Plaintiffs"), for themselves and the Settlement Class Members, move for (i) preliminary approval of the Settlement[1] of this Action against Defendants Benefytt Technologies, Inc. and Health Plan Intermediaries Holdings, Inc. (together, "Benefytt") and Assurance IQ, LLC ("Assurance") (collectively, "Defendants"); (ii) certification of the Settlement Classes for purposes of settlement; (iii) approval of the form and manner of the Class Notice; and (iv) a Fairness Hearing on final approval of settlement.

## I.    INTRODUCTION

This case is one of several actions brought against Benefytt and its business partners to challenge their deceptive marketing and sale of health insurance policies as comprehensive medical insurance that complied with the individual insurance mandate of the Affordable Care Act

---

[1] Unless otherwise indicated, all capitalized terms shall have the meanings set for in the Settlement Agreement, which is attached as **Exhibit 1**.

(the "ACA") when in reality they were selling "limited benefit indemnity plans" and "short term insurance plans" that did not satisfy the ACA's mandate, along with various add-on products like discount cards, association memberships and accidental health insurance to make the health insurance seem more comprehensive than it actually was. In addition to the present case, the actions against Benefytt include: 1) *FTC v. Simple Health Plans, LLC*, No. 18-cv-62593-GAYLES (S.D. Fla.); 2) *FTC v. Benefytt Technologies, Inc.*, No. 8:22-cv-01794-TPB-JSS (M.D. Fla.); 3) *Belin v. Health Insurance Innovations*, *Inc.*, No. 0:19-cv-61430-AHS (S.D. Fla.)("*Belin"*); and 4) *Ketayi v. Health Enrollment Group*, No. 3:20-cv-01198-GPC-KSC (S.D. Cal.). As discussed below, although both of the FTC actions as well as the *Belin* action have settled, to date, the claims at issue in this case -- which encompasses certain different products than those at issue in all the other cases except for the *FTC v. Benefytt Technologies, Inc.* action, discussed further below -- have neither been redressed nor released.

Since they filed their original complaint on May 5, 2020, Plaintiffs have engaged in hard-fought litigation to seek relief from Defendants on behalf of themselves and others similarly situated. Specifically, as discussed further below, over the more than three years since this litigation has been pending, Plaintiffs have, *inter alia*:

- engaged in extensive motion practice, defeating multiple motions to dismiss and fully briefing their motion for class certification;

- conducted wide-ranging fact discovery, including voluminous document discovery and the taking and defending of numerous depositions;

- submitted two expert reports and completed expert discovery of both their experts and Defendants' experts; and

- participated in protracted settlement negotiations.

On May 23, 2023, the Benefytt Defendants filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. D.E. 183. As a result, on May 26, 2023, this litigation was stayed as to Benefytt. D.E. 184. Thereafter, in response to the Court's request as to how the parties would like to proceed with the litigation as to Assurance, Plaintiffs and Assurance jointly requested that the Court stay the balance of the litigation pending their previously-scheduled mediation. D.E. 185. The Court granted the parties' request on June 7, 2023. D.E. 186. Since that time, Plaintiffs have taken steps to preserve their rights against Benefytt in the bankruptcy proceeding and acquired class member contact information from Benefytt.

Ultimately, the mediation between Plaintiffs and Assurance was successful and resulted in a settlement. Accordingly, by this motion, Plaintiffs seek this Court's preliminarily approval of their Settlement with Assurance under Rule 23(e). The Settlement is fair, adequate and reasonable under the circumstances. Notice of the Settlement will be sent to each of the approximately 372,343 class members using Benefytt's existing records. The Notice will direct class members to a Settlement Website containing a Claim Form to complete and submit in order to receive a pro rata distribution of the net settlement proceeds and receive an immediate distribution. The Claim Form will also ask class members who meet the requirements of members of the Medical Expense Subclass to certify under penalty of perjury that they incurred qualifying medical expenses and in what approximate amounts. Medical Expense Subclass members will receive a multiplier on their pro rata distribution, depending on the amount of unreimbursed medical expenses they incurred. Given the size of the settlement amount compared to the number of potential claimants, the concept of a multiplier is preferable to a lengthy and likely far more expensive claims process with its considerable costs relating to expert review of medical records.

The $13.5 million settlement amount represents a significant recovery, particularly given Benefytt's bankruptcy and the risks of continued litigation. If finally approved, the Settlement will end more than three years of litigation, and provide immediate compensation to Settlement Class Members.

Plaintiffs have patterned the proposed Class Notice on Federal Judicial Center models and the notice approved by this Court in *Belin*. The Notice, attached as **Exhibit 1.A**, describes in plain English the history of the litigation, the definition of the Settlement Classes and who is excluded, the amount of the Settlement and the maximum amount of attorneys' fees that may be requested (33 1/3%). The Notice further informs class members of the procedures to be followed if they wish to be heard and informs them of their right to opt out or object.

Notice will be provided by a third-party class action administrator, Kroll Settlement Administration, LLC. Notice will be sent first by email, then by first-class mail to all those for whom there is no available email address or whose email bounces back. As mentioned above, a Settlement Website will be created as a portal to submit Claim Forms and obtain information about the Settlement. A copy of the proposed Claim Form is attached as **Exhibit 1.B**.

While the Settlement is necessarily a compromise, the path to a greater recovery would have been difficult, lengthy and fraught with risk. First, Plaintiffs would have faced the risk of losing their pending motion for class certification. Significantly, this was not a risk that the *Belin* plaintiffs faced when they settled with Benefytt. Moreover, class certification was far from a certainty even though this Court granted the plaintiffs' motion for class certification in *Belin*. Indeed, the plaintiffs' motion for class certification was recently denied in the *Ketayi* action. *Ketayi v. Health Enrollment Group,* No. 20-cv-1198-RSP-KSC, 2023 WL 6373071 (S.D. Cal. Sept. 14, 2023).

Defendants raised substantial arguments in opposition to class certification in this case, some of which were not made in *Belin*. For example, Defendants raised the possibility that the settlement reached and approved by the Court in *FTC v. Benefytt Technologies, Inc.*, No. 8:22-cv-01794-TPB-JSS (M.D. Fla.) on August 11, 2022, which required Benefytt to pay the FTC $100 million for purposes of providing redress to consumers, could make many putative class members whole and deprive them of standing. *See* D.E. 151, at 28. Similarly, Defendants argued at length that this case was distinguishable from *Belin* in that it concerns a broader array of products, distributors and marketing representations than those at issue in *Belin*, purportedly defeating the predominance of common issues and rendering class certification inappropriate. *Id.*, at 12-24. Defendants also filed motions to exclude the testimony of Plaintiffs' two experts supporting class certification. D.E. 155, D.E. 171.

Even if Plaintiffs' motion for class certification were granted, Plaintiffs still would have faced the possibility of Rule 23(f) review by the Eleventh Circuit, as well as additional risks at summary judgment and trial. For these reasons, Plaintiffs and Class Counsel, who have extensive experience in similar litigation, support the Settlement.

The thorough record, developed over several years of litigation, as well as the extensive settlement negotiations that led to the Settlement, give every indication that the Settlement is procedurally and substantively fair, and merits the Court's approval.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs originally filed this action against Benefytt on May 5, 2020, in the Northern District of Alabama, the district where Plaintiffs reside. *See Griffin v. Benefytt Technologies, Inc.*, No. 2:20-cv-630-AKK (N.D. Ala.). In their original complaint, Plaintiffs alleged that Benefytt and its marketing partners Assurance, Nationwide  and Simple Health -- which Plaintiffs identified as

Benefytt's co-conspirators but did not name as Defendants -- marketed health insurance policies as comprehensive medical insurance that satisfied the ACA's individual insurance mandate but instead sold non-ACA compliant limited benefit indemnity plans and short term insurance plans along with various add-on products like discount cards, association memberships and accidental health insurance to make the health insurance seem more comprehensive than it really was. D.E. 1, at ¶ 1. Plaintiffs further alleged that the policies left consumers with little or no insurance, no coverage for preexisting conditions and prescription drugs and minimal coverage for other services. *Id.* Based on these allegations, Plaintiffs, on behalf of themselves and a putative class of similarly situated consumers, asserted claims against Benefytt for violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* Count I of the original complaint alleged violation of RICO, 18 U.S.C. § 1962(c); Count II alleged RICO conspiracy in violation of 18 U.S.C. § 1962(d); Count III alleged violation of 18 U.S.C. § 2 by seeking to and aiding and abetting in violation of 18 U.S.C. § 1962(c); and Count IV sought declaratory and injunctive relief under 18 U.S.C. § 1964(a). *Id.*, at ¶¶ 118-135.

In response to the original complaint, Benefytt brought a motion to dismiss for failure to state a claim (D.E. 18) as well as a motion to transfer the action, pursuant to the first-filed rule, to the Southern District of Florida, where the *Belin* action was pending. D.E. 27. In its motion to transfer, Benefytt argued that Plaintiffs "propose nearly the same putative class, allege nearly the same facts, and assert nearly the same claims against nearly the same defendants." D.E. 27, at 1. Shortly after Benefytt filed its motion to transfer, Plaintiffs filed a motion for leave to amend their complaint to add Assurance as a Defendant. D.E. 28.

On November 9, 2020, Judge Kallon of the Northern District of Alabama granted the motion to transfer and sent the action to the Southern District of Florida. D.E.33. As grounds for

transfer, Judge Kallon found that "because both cases assert most of the same allegations and accuse the defendants of virtually the same conduct, it would be a waste of judicial resources for two separate courts to evaluate these facts." *Id.*, at 11 (quotations and citations omitted).

Following transfer, on February 9, 2021, this Court granted Plaintiffs' pending motion for leave to amend their complaint and denied Benefytt's pending motion to dismiss as moot. D.E. 49. Plaintiffs filed an Amended Complaint on February 16, 2021, in which it named Assurance as a Defendant. D.E. 50.

Benefytt and Assurance both filed motions to dismiss for failure to state a claim. D.E. 57, 78. In separate orders issued on February 25, 2021 and March 30, 2021, respectively, this Court denied both motions as to Plaintiffs' claims for damages but granted them as to Plaintiffs' claims for injunctive relief on the basis that it was unlikely that Plaintiffs would be misled by Defendants' sales practices again in the future. D.E. 84, 94.

Per Defendants' request, on May 6, 2022, Plaintiffs filed an unopposed motion for leave to file a Second Amended Complaint to clarify that Plaintiffs were not asserting the claims in this action on behalf of persons who previously released their claims in connection with the settlement reached in *Belin*, and to further clarify that Defendants' sales practices with respect to both limited benefit indemnity plans and short term insurance plans were at issue. D.E.103. The Court granted Plaintiffs' motion for leave to amend on May 16, 2022 (D.E. 106) and Plaintiffs filed their Second Amended Complaint on May 17, 2022. D.E. 107. Defendants answered the Second Amended Complaint on May 26, 2022, and May 31, 2022, respectively. D.E. 109 (Assurance), D.E. 110 (Benefytt).

The parties engaged in extensive discovery over the ensuing months. Plaintiffs issued 74 requests for production of documents to Benefytt and 47 requests for production of document to

Assurance. Sheehan Decl., at ¶ 8.[2] Defendants produced over 100,000 pages of documents in response to these requests, which Plaintiffs reviewed and analyzed. *Id.* Plaintiffs also issued 25 interrogatories to Benefytt and 17 interrogatories to Assurance. *Id.*

Plaintiffs also deposed the Defendants' corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6), as well as several of Defendants' employees and Defendants' two experts. *Id.*, at ¶¶ 10-12. Plaintiffs also filed and fully briefed a motion to exclude the testimony of one of Defendants' experts. *Id.*, at ¶ 12.

In addition, Plaintiffs served subpoenas upon several non-parties, including distributors American National and Priority Insurance (who Plaintiffs only learned through discovery had sold some of the products at issue to them) and former Benefytt executives and took their depositions. *Id.*, at ¶ 11.[3]

Each of the Plaintiffs responded to lengthy requests for production, interrogatories and requests for admission. *Id.*, at ¶ 9. Together Plaintiffs produced more than 1,000 pages of documents, including health-related documents containing personal information. *Id.* Plaintiffs also spent considerable time preparing for and sitting for their depositions. *Id.*

Plaintiffs' two experts likewise spent a significant amount of time preparing their reports as well as preparing for and sitting for their depositions. *Id.*, at ¶ 12. Plaintiffs also filed briefs in opposition to motions filed by Defendants to exclude the testimony of both of their experts. *Id.*

Plaintiffs' efforts in discovery culminated in the filing of a motion for class certification on January 30, 2023, which was supported by over 50 exhibits and two expert reports. D.E.143, 159.

---

[2] All references herein to the "Sheehan Decl., at ¶ __" refer to paragraphs in the Declaration of Patrick J. Sheehan, Esq., attached as **Exhibit 2**.

[3] "American National" refers to American National Benefits Group, LLC. "Priority Insurance" refers to Independent Insurance Consultant, Inc., d/b/a Priority Insurance.

On the same day, Plaintiffs filed a motion for leave to file a Third Amended Complaint conforming the class definitions to those in Plaintiffs' motion for class certification and identifying American National and Priority Insurance as Defendants' co-conspirators. D.E. 137. Plaintiffs' motion for leave to file the Third Amended Complaint was granted on February 1, 2023 (D.E. 140) and it was filed on the same day. D.E. 141. With the filing of Plaintiffs' reply in support of its motion for class certification on March 13, 2023 (D.E. 159), the motion was fully briefed.

Two months later, on May 23, 2023, the Benefytt Defendants filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. D.E. 183. As a result, on May 26, 2023, this litigation was stayed as to Benefytt. D.E. 184. Thereafter, Plaintiffs and Assurance jointly requested that the Court stay the balance of the litigation pending their previously-scheduled mediation. D.E. 185. The Court granted the parties' request on June 7, 2023. D.E. 186.

While they were litigating, the parties engaged in extensive settlement negotiations, including multiple mediation sessions. The parties' first mediation session, in which Plaintiffs, Benefytt and Assurance all participated, took place on October 13, 2022, before John S. Freud. The mediation lasted a full day but resulted in an impasse. Sheehan Decl., at ¶ 14.

On June 19, 2023, Plaintiffs and Assurance participated in a second all-day mediation before Mr. Freud, following which they reached a $13.5 million settlement in principle. This agreement in principle was later reduced to writing in a term sheet that was executed on June 28, 2023 and, ultimately, memorialized in the final Settlement Agreement. *Id.*

In response to requests of Plaintiffs and Assurance for more time to obtain class member contact information from Benefytt and finalize their settlement, the Court subsequently extended the stay of the litigation on July 14, 2023, August 14, 2023 and finally, on September 14, 2023,

when it ordered the parties to file their settlement papers on or before November 14, 2023.  D.E.

197, D.E. 199 and D.E. 201. Plaintiffs bring the present motion in accordance with the Court's

September 14  Order.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

Plaintiffs and Assurance have agreed to the following settlement terms.

### A.    The Settlement Classes

The Settlement Classes include the following Classes and Subclass:

- American National Class. All individuals who purchased Benefytt's limited benefit indemnity plans or short term medical plans through American National from May 5, 2016 through the date of Preliminary Approval, and paid fees and/or premiums that were not completely recovered through a refund or chargeback.
- Assurance Class. All individuals who purchased Benefytt's limited benefit indemnity plans or short term medical plans through Assurance from May 5, 2016 through the date of Preliminary Approval, and paid fees and/or premiums that were not completely recovered through a refund or chargeback.
- Benefytt[4] Class. All individuals who purchased limited benefit indemnity plans or short term medical plans directly from Benefytt from May 5, 2016 through the date of Preliminary Approval, and paid fees and/or premiums that were not completely recovered through a refund or chargeback.
- Priority Insurance Class. All individuals who purchased Benefytt's limited benefit indemnity plans or short term medical plans through Priority Insurance from May 5, 2016 through the date of Preliminary Approval, and paid fees and/or premiums that were not completely recovered through a refund or chargeback.
- Medical Expense Subclass. All individuals within any of the above Classes who incurred Uncovered Medical Expense(s).

### B.    The Settlement Consideration

Assurance will pay $13.5 million to resolve this class action. Settlement Agreement,

Section I.(k). No portion of the Settlement Fund will revert to Defendants. *Id.*, at Section VI.(o).

Notice and Administrative Expenses will be deducted from the Settlement Fund and paid to the

Settlement Administrator. *Id.*, at Section VI. (e)-(g). Plaintiffs may seek an award up to 33 1/3%

---

[4] "Benefytt" refers collectively to Benefytt Technologies, Inc., formerly Health Insurance Innovations, Inc. and Health Plan Intermediaries Holdings, Inc.

of the class action settlement payment in attorneys' fees plus reimbursement of litigation expenses.[5] *Id.*, at Section IV.(b). Attorneys' fees and expense reimbursements approved by the Court will be paid to Class Counsel. *Id.* The balance, along with any interest accrued on the Settlement Fund, will be applied to pay claims of Settlement Class Members.

The class release is straightforward, encompassing claims that were or could have been asserted in the case. *Id.*, Section IX. The Assurance Released Parties are comprised of Assurance and related entities and individuals and the Releasing Parties are comprised of Settlement Class Members who do not timely opt out of the Settlement and Class Counsel. *Id.*, at Section I.(ff), (gg).

## C.    Notice and Administration

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Plaintiffs and Assurance have agreed that a third-party administrator, Kroll Settlement Administration, LLC, will act as Settlement Administrator. *Id.*, at Section I.(ii). Kroll will be responsible for giving and/or supervising Direct Notice to Settlement Class Members; sending, receiving, reviewing and adjudicating Claim Forms; obtaining new addresses for any returned emails or postal mailings; maintaining records of all activities relating to notice and administration of this Settlement; and other tasks reasonably required to effectuate

---

[5] Class Counsel will file a motion for approval of fees and expenses within 45 days of Preliminary Approval. Settlement Agreement, Section IV.(a). Settlement is not contingent upon the award of any particular fee. *Id.*, at Section IV.(e). Class Counsel took on considerable financial risk to obtain these results. Sheehan Decl., at ¶ 6. Class Counsel devoted thousands of hours of time and fronted approximately $250,000 in costs on a contingency fee basis, with no guarantee of any recovery or reimbursement of expenses. *Id.* Class Counsel's firms have less than 20 lawyers combined, which increased the financial risk to the firms from the use of significant firm resources. *Id.* They faced formidable and sophisticated opposition from a 1,300-lawyer firm, King & Spalding LLP, and a 900-lawyer firm, Seyfarth Shaw LLP. *See* https://www.kslaw.com/pages/about; https://www.seyfarth.com/about-us/index.html.

the administration of the Settlement. *Id.*, at VI.(b). Kroll will establish a Settlement Website and post the Class Notice, Claim Form and related settlement documents on it. *Id.*, at VI.(c)(ii). Assurance will fund up to $150,000 in initial notice and administration costs prior to final approval. *Id.*, at VI.(e).

Notice of the Settlement will be sent directly to Settlement Class Members by email, requesting confirmation of receipt. *Id.*, at VI.(c)(i)(1). Emails will have a hyperlink to the Settlement Website, where Settlement Class Members can complete and submit a Claim Form. *Id.* For those Settlement Class Members for which neither the Settlement Administrator nor the Defendants have an email address, and for those whose emails are undeliverable, direct notice shall be made by postcard via U.S. mail to the last-known mailing addresses. *Id.*, at VI.(c)(i)(2). The postcard will direct the Settlement Class Members to the Settlement Website. *Id.* Each Settlement Class Member shall have a right to object to the Settlement within 90 days of Preliminary Approval. *Id.*, at Section I.(v). The requirements for excluding oneself from the Settlement or filing and pursuing an objection will be described for Settlement Class Members in the Class Notice. *Id.*, at Section I.(2), Exhibit 1.A.

The Settlement Administrator shall also be responsible for overseeing the calculation of, and implementing the distribution of, the Net Consideration to Settlement Class Members. *Id.*, at Section VI.(d). Each Settlement Class Member who timely submits a valid Claim Form and does not opt out of the Settlement shall be a Participating Settlement Class Member and receive his or her pro rata share of the Settlement Fund. *Id.*, at Section I.(aa), Section VI.(d). The Settlement Administrator shall calculate each share according to a formula provided in the Settlement Agreement. *Id.*, at Section VI.(d). Participating Settlement Class Members who submit a Claim Form stating under penalty of perjury that he or she incurred Uncovered Medical Expenses will

receive a multiplier of two, three or four times his or her base share, depending on the amount of Uncovered Medical Expenses he or she incurred. These multipliers, while not an exact determination of Participating Class Members' shares, recognize the enhanced damages of Subclass members while avoiding the considerable administrative burdens and costs of having a document-intensive, evidentiary claim process. Sheehan Decl., at ¶ 17.

Finally, the Settlement Administrator will, within 10 days after filing of this Motion, cause the mailing of CAFA Notice to appropriate officials pursuant to 28 U.S.C. § 1715(b). Settlement Agreement, at Section VI.(h).

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

"There exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (Altonaga, J.) (citations omitted). "Thus, in reviewing a proposed settlement, as here, the Court must take into account 'the clear policy in favor of encouraging settlements, . . . particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'" *Id.* (quoting *Patterson v. Newspaper & Mail Deliverers' Union*, 514 F.2d 767, 771 (2d Cir.1975)).

Within this context, a district court's approval of a class action settlement proceeds in two steps. *See, e.g., Wilson v. Everbank, N.A.*, 2015 WL 10857344, at *1 (S.D. Fla. Aug. 31, 2015). The first step determines whether to conditionally certify a settlement class and notify class members of the pending settlement and a right to participate in a final fairness hearing. *See id.*; *see also* MANUAL FOR COMPLEX LITIG. (FOURTH) §§ 21.622-.623. The second step involves the fairness hearing itself, which occurs only after class members have been notified of their right

to participate in the hearing and object to the settlement. *See Wilson*, 2015 WL 10857344, at *1; *Gevaerts v. TD Bank, N.A.,* 2015 WL 12533121, at *10 (S.D. Fla. Aug. 4, 2015).

During the first step — the preliminary approval stage — "approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Accout Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (King, J.) (quotation omitted). "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *Id.* at 661-62 (quoting MANUAL FOR COMPLEX LITIG. (THIRD) § 30.42).

Preliminary approval requires the Court to evaluate a number of factors. The December 2018 amendments to Rule 23 provide explicit new instructions, requiring notice to be issued if the court is likely to approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a settlement, the court should consider whether:

> (A)     the class representatives and class counsel have adequately represented the class;
> (B)     the proposal was negotiated at arm's length;
> (C)     the relief provided for the class is adequate, taking into account:
>> (i)     the costs, risks, and delay of trial and appeal;
>> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)     any agreement required to be identified under Rule 23(e)(3); and
> (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In exercising its discretion, courts in this Circuit also continue to analyze class action settlements using the so-called *Bennett* factors. *See Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at *7-*8 (S.D. Fla. July 13, 2021) (analyzing the Rule 23(e) and *Bennett* factors together to approve settlement). The *Bennett* factors consider (i) the likelihood of success at trial; (ii) the range of possible recovery; (iii) the range of possible recovery at which a settlement is fair, adequate and reasonable; (iv) the anticipated complexity, expense and duration of litigation; (v) the opposition to the settlement; and (vi) the stage of proceedings at which the settlement was achieved. *See Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 691 (S.D. Fla. 2014) (citing *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984)).

Here, an analysis of both the new Rule 23(e)(2) factors and the *Bennett* factors shows that the proposed Settlement is fair, adequate and reasonable, and within the reasonable range of possible final approval.

### A.     The Adequacy of Representation by Class Representation and Class Counsel

Rule 23(e)(2)(A) considers whether the class received adequate representation. Plaintiffs have pursued this litigation vigorously. They actively sought out counsel, monitored the lawsuit throughout its pendency, sat for depositions, produced personal information and participated in mediation in an effort to obtain the maximum recovery for both themselves and other Settlement Class Members. Sheehan Decl., at ¶ 13; Carroll Decl., at ¶¶4, 10-14.[6] As for Class Counsel, adequacy is "presumed" absent specific proof to the contrary. *Diakos*, 137 F. Supp. 3d at 1309. Class Counsel are experienced in complex class litigation and have successfully prosecuted similar cases throughout the country. Sheehan Decl., at ¶¶ 19-20; Carroll Decl., at ¶ 18. There has been

---

[6] All references herein to the "Carroll Decl., at ¶ __" refer to paragraphs in the Declaration of Matthew Carroll, Esq., attached as **Exhibit 3**.

no challenge to Class Counsel's adequacy to serve as Class Counsel.

**B.     Whether Negotiations Were Conducted at Arm's Length**

Rule 23(e)(2)(B) looks at whether the parties negotiated an arm's-length settlement. "In determining whether there was fraud or collusion, the Court examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Berman v. Gen. Motors, LLC*, 2019 WL 6163798, at *4 (S.D. Fla. Nov. 18, 2019) (citations omitted).

There is no hint of collusion here. The parties attended a full-day mediation with highly accomplished mediator John S. Freud on October 13, 2022 that resulted in an impasse. Sheehan Decl., at ¶ 14; Carroll Decl., at ¶ 13. Some eight months later, after the parties had briefed Plaintiffs' motion for class certification and Benefytt had filed its bankruptcy petition, Plaintiffs and Assurance returned to another full-day mediation on June 19, 2023 with Mr. Freud, following which they reached an agreement in principle to settle the litigation for $13.5 million. Sheehan Decl., at ¶ 14; Carroll Decl., at ¶ 13. *See also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion."). In the days and weeks that followed, Plaintiffs and Assurance reduced their agreement in principle to a written term sheet signed on June 28, 2023 and, ultimately, reached a comprehensive agreement that they memorialized in the Settlement Agreement. Sheehan Decl., at ¶ 14.

Furthermore, no portion of the settlement will revert to Defendants. *Id.*, at Section VI.(o). Although Assurance has agreed not to oppose Class Counsel's request for an attorneys' fee award of up to 33 1/3%, the Settlement is not contingent upon any particular award to Class Counsel. *Id.*,

at Section IV.(e).

Relatedly, the sixth *Bennett* factor looks at the stage of litigation at which the parties reached settlement. By the time Plaintiffs and Assurance reached settlement here, they had been litigating heavily for over three years, had completed virtually all discovery, briefed class certification and hired experts in the fields of insurance and consumer marketing to analyze their claims and defenses. As such, Plaintiffs and Assurance were well-positioned to evaluate the benefits of the Settlement Agreement and consider the expense, risks and uncertainty of continued and likely protracted litigation. In sum, the Settlement was negotiated at arm's length, without collusion and at a mature stage of the litigation.

### C.    The Adequacy of Relief Provided by the Settlement

Rule 23(e)(2)(C) looks at whether the relief provided in the settlement is adequate, taking into account: (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of distributing relief and processing claims; (iii) the terms of any attorneys' fees award, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. Relatedly, the first through fifth *Bennett* factors analyze the likelihood of success at trial; the range of possible recovery; the range of possible recovery at which a settlement is fair, adequate and reasonable; the anticipated complexity, expense and duration of litigation; and any opposition to the settlement. *See Saccoccio*, 297 F.R.D. at 691.

Addressing the *Bennett* factors first, in determining whether the Settlement is adequate and fair in comparison to the potential range of recovery, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Berman*, 2019 WL 6163798, at *5 (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)). "[T]he fact that a proposed settlement amounts to only a fraction of

the potential recovery does not mean the settlement is unfair or inadequate." *Ferron*, 2021 WL 2940240, at *7-8 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988)). "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

Here, the potential damages that Settlement Class Members could be awarded at trial are immense. The fees and premiums paid by Settlement Class Members amount to hundreds of millions of dollars, and a successful RICO verdict would have trebled that number. In addition, Medical Expense Subclass members incurred millions more in expenses. Given the potential size of Plaintiffs' claims and Benefytt's poor financial position, the possibility that Settlement Class Members could collect on a victory at trial was far from a certainty. The analysis therefore focuses on whether Plaintiffs and Class Counsel achieved an adequate settlement given the financial realities of this case.

In determining whether a settlement is adequate, the Court may rely at least somewhat upon the judgment of experienced counsel. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel."). Here, Class Counsel have significant experience in class action and complex fraud litigation, and believe that under these circumstances, the multimillion-dollar relief provided by the Settlement is fair, reasonable and adequate under the circumstances. Sheehan Decl., at ¶¶ 19-20; Carroll Decl., at ¶ 19.

### 1. The Risks, Costs and Delay of Continued Litigation

The Settlement finds further support from the four specific factors enumerated in new Rule 23(e)(C). Under Rule 23(e)(2)(C)(i), which examines the risks, costs and delay of continued litigation, the Court must "consider the vagaries of litigation and compare the significance of

immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Berman*, 2019 WL 6163798, at *6 (quoting *Lipuma*, 406 F. Supp. 2d at 1323). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Id.* (quoting *Behrens*, 118 F.R.D. at 543).

Here, the potential costs and delay of continued litigation in this case are substantial. The Settlement will bring to conclusion a complex class action lawsuit pending for more than three years. But for the Settlement, the parties will continue to incur significant additional legal fees and expenses related to further discovery, motion practice and potentially trial. A potential Rule 23(f) appeal in the event the Court grants class certification, which is not certain, pre-trial motions, trial, and resolution of any subsequent appeals would likely have taken years, delaying any benefit to the Settlement Class Members by years as well.

Relatedly, the first *Bennett* factor examines the likelihood of success at trial. Here, Plaintiffs have successfully navigated through multiple motions to dismiss but class certification has not yet been granted and any order granting class certification would be subject to appellate review under Federal Rule of Civil Procedure 23(f). Further, this litigation is stayed as to Benefytt and Assurance possesses defenses that it may assert at trial or via summary judgment. Given these circumstances and the fact that a trial victory is rarely a given for any party, the risks attendant to continued litigation strongly support entering a settlement now.

Plaintiffs and Class Counsel also have considered the fact that Assurance has shown its willingness and ability to defend the lawsuit through trial and possibly appeal. Yet Assurance has concluded that it is desirable to settle the claims to avoid the costs, disruption and distraction of further litigation.

### 2.    The Effectiveness of Distributing Relief to the Settlement Classes

Rule 23(e)(2)(C)(ii) examines the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the Settlement requires the Settlement Administrator to provide Direct Notice, first by email and then by mail if necessary, to each Settlement Class Member using records provided by Benefytt. Settlement Agreement, at Section VI.(c). All notices will direct Settlement Class Members to a Settlement Website containing more information and the Claim Form. *Id.* Each Settlement Class Member who timely submits a Claim Form to the Settlement Administrator will receive payment.  The Claim Form contains boxes for a Settlement Class Member to affirm, under penalty of perjury, whether he or she is a member of the Medical Expense Subclass and approximately how much in unreimbursed medical expenses he or she has incurred. *Id.*, at Exhibit 1.B. Members of the Medical Expense Subclass will receive a multiplier of their pro rata share to as compensation for medical expenses. *Id.*, at Section VI.(d). Given the size of the settlement amount compared to the number of potential claimants, the concept of a multiplier is preferable to a lengthy and likely far more expensive claims process with its attendant costs for expert review of medical records.

### 3.    The Reasonable Terms Relating to Attorneys' Fees

Rule 23(e)(2)(C)(iii) looks at "the terms of any proposed award of attorney's fees, including timing of payment."  Here, Class Counsel may request up to 33 1/3% of the net Settlement Amount of $13.5 million. *Id.*, Section IV.(a). Such a request is consistent with *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which mandates use of the percentage method. Following *Camden I*, fee awards in the Eleventh Circuit have averaged around one-third. *See Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide — roughly one-third")*;*

20

*see also George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (discussing the normality of 33% contingency fees); Eisenberg, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%). Given the diligence and experience of Class Counsel, which investigated and developed the claims, the complexity of the issues involved, the substantial amount of time dedicated to the Action and Settlement, and the financial risk associated with the representation, a fee of up to 33 1/3% fee would be reasonable here.

As to the timing of payment to the attorneys, the Settlement Agreement calls for payment within seven days of a Final Approval Order and Judgment of this Court.[7] Settlement Agreement, at Section IV.(b). Class Counsel agrees that to the extent its fees or costs are reduced, vacated or reversed, or should this Settlement be terminated or cancelled for any reason, it will return the funds to the Escrow Agent within 15 days. *Id.*

### 4. The Equitable Treatment of Settlement Class Members Relative to Each Other

Finally, Rule 23(e)(2)(D) analyzes whether the Settlement Agreement treats all members of the Settlement Classes equally. Here, the Settlement Agreement treats all members of the Settlement Classes equally as each will receive the opportunity to submit a Claim Form and be paid a *pro rata* amount based on their payment of unrefunded fees and premiums. Also, members of the Medical Expense Subclass will have the opportunity to affirm under penalty of perjury that they incurred uncovered medical expenses during the Class Period and in what approximate amounts. Each Medical Expense Subclass member will receive a reasonable multiplier of their share on the basis that they incurred damages beyond the payment of fees and premiums. Especially given the limited Settlement Fund here, this method of approximating Medical Expense

---

[7] A proposed Final Approval Order is attached as **Exhibit 1.D**.

Subclass damages is preferable to the time and expense of a full claims-made procedure complete with the submission of medical records, and the review and verification of medical expenses by paid experts.

In sum, when taking into consideration the substantial monetary benefits to the Settlement Classes, the specific risks faced by the Settlement Classes in prevailing on Plaintiffs' claims, the stage of the proceedings at which the Settlement was reached, the effectiveness of the proposed method for distributing relief to the Settlement Classes and the proposed manner of allocating benefits to the Settlement Classes: (i) the proposed Settlement provides for a recovery for the Settlement Classes that is within range of what could be approved as fair, reasonable and adequate taking into account all of the potential risks, expense and delay of continued litigation; (ii) is the result of lengthy, good-faith, arm's-length negotiations that took place under the auspices of a highly accomplished mediator; (iii) is not deficient; (iv) otherwise meets the criteria for approval; and (v) warrants issuance of notice to the Settlement Classes.

## V.       CERTIFICATION OF THE SETTLEMENT CLASSES IS APPROPRIATE

In granting preliminary approval, the Court should also certify the Settlement Classes and Medical Expense Subclass for settlement purposes. Under Rule 23(e)(1), at the preliminary approval stage, this Court must determine whether it is likely to be able to certify the class for settlement purposes at final approval. For settlement purposes, Plaintiffs respectfully request that the Court certify the Settlement Classes defined above, and in Section I.(jj) of the Settlement Agreement. "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried,

would present intractable management problems ... for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the Settlement Classes for settlement purposes permits notice of the proposed Settlement to issue and inform Settlement Class Members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing. *See Manual for Compl. Lit*., at §§ 21.632, 21.633. For purposes of this Settlement only, Assurance does not oppose class certification. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Classes consist of hundreds of thousands of people located throughout the United States, and joinder of all such persons is impracticable. Sheehan Decl., at ¶ 16; *see also* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"); *Belin v. Health Insurance Innovations, Inc.*, 337 F.R.D. 544, 556 (S.D. Fla. 2021) (class comprised of "tens of thousands… more than sufficient to establish numerosity").

"[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). It is "well established" that the commonality threshold "is not high." *Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660, 667 (N.D. Ala. 1999); *see also Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3rd Cir. 1996) (recognizing "very low threshold for commonality"). The legal claims among the class members do not need to be exactly the same, *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991), and not all questions of law or fact must be common*, Singer v. AT&T Corp.*, 185 F.R.D. 681, 687 (S.D. Fla. 1998). Indeed, "'even a single common question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). Here, the commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Classes that center on Defendants' sales practices as alleged in the operative complaint and that concern whether Defendants were parties to a RICO conspiracy. *See* Fed. R. Civ. P. 23(a)(2). *See Belin*, 337 F.R.D. at 557 (finding commonality requirement met because, "[i]n addition to raising common questions that focus on a scheme, RICO claims likewise raise questions of a standardized course of conduct.").

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Ausländer*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). "The

typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). Plaintiffs are typical of absent Settlement Class Members because they were subjected to the same practices and claim to have suffered from the same injuries, and because they will equally benefit from the relief provided by the Settlement. *See Belin*, 337 F.R.D. at 557-558.

Plaintiffs also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Classes, because Plaintiffs and absent Settlement Class Members have an equally great interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. *See* Sheehan Decl., at ¶¶ 19-20; Carroll Decl., at ¶ 18. Plaintiffs' counsel have devoted substantial time and resources to vigorous litigation of this case through the defeat of multiple motions to dismiss, engaging in extensive discovery, the filing of a motion for class certification supported by detailed record evidence and expert testimony, and settlement. Sheehan Decl., at ¶¶ 4-14; Carroll Decl., at ¶¶ 4-14.

To satisfy the predominance requirement of Rule 23(b)(3), "the issues in the class action

that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1557-58 (11th Cir. 1989) (internal quotation marks omitted). "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Sen's., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). That said, the predominance inquiry "does not require a plaintiff seeking class certification to prove that each element of its claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013).

Plaintiffs satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. Indeed, each Settlement Class Member's relationship with the Defendants arises out of the same misleading marketing scheme. *See Belin*, 337 F.R.D. at 558. .

Furthermore, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3)*; Belin*, 337 F.R.D. at 559. For these reasons, the Court should certify the Settlement Classes.

## VI.    THE PROPOSED NOTICE PLAN IS ADEQUATE

Class notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). "Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 172 (1974). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Id*. at 175.

Here, the proposed form and method of notice of settlement satisfies all due process considerations and meets the requirements of Rule 23(e)(1). The Class Notice attached as **Exhibit 1.A**, which is modeled after the Federal Judicial Center models and the notice this Court approved in *Belin*, fully apprises Settlement Class Members of the existence of the lawsuit and the claims asserted, the proposed Settlement Agreement and the information they need to make informed decisions about their rights. This includes (i) the risks attendant to continued litigation; (ii) the terms and operation of the Settlement Agreement; (iii) the nature and extent of the release; (iv) the maximum attorneys' fees and expenses that will be sought; (v) the procedure and timing for opting out of the Settlement; (vi) the procedure and timing for objecting to the Settlement Agreement; and (vi) the date and place of the Fairness Hearing. Significantly, this Court approved a similar notice plan in *Belin*. *See Belin*, D.E. 265, at 5-7.

The Settlement Class Members are identifiable because they were customers of Defendants. Plaintiffs have acquired last-known contact information for Settlement Class Members from Benefytt. *See* Sheehan Decl., at ¶ 16. Using this information, notice of the Settlement will be sent to the Settlement Class Members by email within 45 days of the entry of a Preliminary Approval Order. Within that time, the Settlement Administrator shall also establish a Settlement Website containing the Class Notice and the Settlement Agreement. For those Settlement Class Members for which there is no email address, or whose emails are undeliverable, direct notice shall be made by U.S. mail to the last-known mailing addresses.

## VII.    REQUEST FOR FAIRNESS HEARING

Rule 23(e)(2) provides that if a settlement proposal would bind class members, the court may give final approval of it "only after a hearing and on a finding that it is fair, reasonable, and adequate." Plaintiffs ask this Court to set a Fairness Hearing for the purpose of considering the fairness, reasonableness and adequacy of the Settlement Agreement, the payment of attorneys' fees and expenses, and whether the Settlement Agreement should be finally approved. Class Counsel will file a memorandum in support of final approval prior to the Fairness Hearing. Plaintiffs respectfully request that the Fairness Hearing be set for a date approximately 180 days from the entry of the Preliminary Approval Order. This would allow ample time for notice to the Settlement Class Members and for the parties to address any objections that may be filed.

## VIII.   CONCLUSION

For the reasons stated above, Plaintiffs ask this Court to enter the proposed Preliminary Approval Order attached as **Exhibit 1.C** and (i) grant preliminary approval of the Settlement of this Action as fair, adequate and reasonable, and within the reasonable range of possible final approval; (ii) certify the Settlement Classes, appoint Plaintiffs as Settlement Class Representatives and appoint Plaintiffs' Counsel as Class Counsel for settlement purposes; (iii) approve the form and content of the Class Notice and find that the notice program set forth constitutes the best notice practicable under the circumstances, and satisfies due process and Rule 23; (iv) set the Objection Deadline and Opt-Out Deadline; and (v) schedule a Fairness Hearing, as well as any other or further relief the Court deems necessary or proper.

Dated: November 14, 2023

**WHATLEY KALLAS, LLP**

*/s/ Charles Nicholas Dorman*
Charles Nicholas Dorman
111 North Orange Avenue
Suite 800
Orlando, Florida 32801
Telephone: (321) 325-6624
Facsimile: (800) 922-4851
Email:  ndorman@whatleykallas.com

Joe R. Whatley Jr.
W. Tucker Brown
2001 Park Place North 1000
Park Place Tower
P.O. Box 10968
Birmingham, AL 35203
Telephone: (205) 488-1200
Facsimile: (800) 922-4851
jwhatley@whatleykallas.com
tbrown@whatleykallas.com

Patrick J. Sheehan
101 Federal Street, 19th Floor
Boston, MA 02110
Telephone: (617) 573-5118
Facsimile: (617) 371-2950
psheehan@whatleykallas.com

**MATT CARROLL LAW, LLC**
Matt Carroll
P.O. Box 660749
Vestavia, AL 35216
Telephone: (205) 240-2586
Email: matt@mattcarrollfirm.com

**INGE JOHNSTONE LAW OFFICES**
F. Inge Johnstone
1 Independence Plaza
Homewood, AL 35209
Telephone: (205) 771-4009
Facsimile: (205) 771-4049
Email:  ijohnstone@ingejohnstone.com

J. Dennis Gallups
PO Box 381894
Birmingham, AL 35283

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has been electronically filed on November 14, 2023, with the Clerk of the Court using the CM/ ECF system which will send notification of such filing to the following counsel of record:

Val Leppert
KING & SPALDING LLP
200 S. Biscayne Blvd., Suite 4700
Miami, FL 33131
(404) 572-4600
vleppert@kslaw.com

Dale A. Evans Jr.
Florida Bar Number: 98496
LOCKE LORD LLP
777 South Flagler Drive, Suite 215-East
West Palm Beach, Florida 33401
Telephone: 561-833-7700
Facsimile: 561-655-8719
dale.evans@lockelord.com

Vincent A. Sama (*Pro Hac Vice*)
Catherine B. Schumacher (*Pro Hac Vice*)
Daphne Morduchowitz (*Pro Hac Vice*)
Sarah Fedner (*Pro Hac Vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
vsama@seyfarth.com
cschumacher@seyfarth.com
dmorduchowitz@seyfarth.com
sfedner@seyfarth.com

Martha Rosa Mora
AVILA RODRIGUEZ HERNANDEZ
MENA & FERRI
2525 Ponce de Leon Boulevard
Penthouse 1225
Coral Gables, FL 33134
(305) 779-3567
mmora@arhmf.com

Renée B. Appel (*Pro Hac Vice*)
975 F Street NW
Washington, D.C. 20004
Telephone: (202) 828-5371
rappel@seyfarth.com

*/s/ Charles Nicholas Dorman*
Attorney for Plaintiffs

31