**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| WILLIAM JAMES GRIFFIN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 0:20- cv-62371-AHS |
| BENEFYTT TECHNOLOGIES, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES,
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs William James Griffin, Ashley Lawley, William "Jeff" Cooper, Sandra Wilson and Vicki Needham ("Plaintiffs"), for themselves and the Settlement Class Members, move for (i) final approval of the Settlement[1] of this Action against Defendants Benefytt Technologies, Inc. and Health Plan Intermediaries Holdings, Inc. (together, "Benefytt") and Assurance IQ, LLC ("Assurance") (collectively, "Defendants"); and (ii) an award of attorneys' fees to Class Counsel and reimbursement of expenses advanced by Class Counsel to prosecute the Action, and state:

**I.      INTRODUCTION**

On December 1, 2023, the court preliminarily approved a $13.5 million settlement to resolve this class action, which alleges Benefytt and its business partners engaged in deceptive marketing and sale of health insurance policies as comprehensive medical insurance that complied with the individual insurance mandate of the Affordable Care Act (the "ACA") when in reality they were selling "limited benefit indemnity plans" and "short term insurance plans" that did not

---

[1] Unless otherwise indicated, all capitalized terms shall have the meanings set for in the Settlement Agreement (D.E. 210-1).

satisfy the ACA's mandate, along with various add-on products like discount cards, association memberships and accidental health insurance to make the health insurance seem more comprehensive than it actually was.

Nothing has occurred in the interim to change the Court's preliminary conclusion that the settlement is fair, reasonable and adequate. Indeed, not one of the more than 370,000 Settlement Class Members objected to the Settlement, and just eight opted out.

After establishing a Settlement Website in January 2024, the Settlement Administrator sent 372,343 Direct Notices to Settlement Class Members via email or U.S. mail.  As a result of these notices, 4,263 Claim Forms were submitted by the claims deadline. This claims submission rate represents 1.1% of all 372,343 Settlement Class Members, which is within the reasonable claims rate in this District and elsewhere for a suit with this many class members. *See infra* Section V.

After the Settlement Administrator calculates each Participating Class Member's *pro rata* share of the Settlement Fund as provided in Section VI(d) of the Settlement Agreement, each Participating Class Member will receive his or her *pro rata* share of the Net Consideration. Medical Expense Subclass members will receive a multiplier on their *pro rata* distribution as described in Section VI(d) of the Settlement Agreement. Given the size of the settlement and the number of claimants, the concept of a multiplier is preferable to a lengthy and likely far more expensive claims process with its considerable costs relating to expert review of medical records.

The $13.5 million settlement amount represents a significant recovery, particularly given Benefytt's financial condition and the risks of continued litigation. If finally approved, the Settlement will end more than four years of litigation and provide immediate compensation to Participating Class Members. The agreed-upon Settlement Fund is non-reversionary, so no money will revert to Defendants.

While the Settlement is necessarily a compromise, the path to a greater recovery was daunting. First, Plaintiffs would have faced the risk of losing their pending motion for class certification. Significantly, this was not a risk that the plaintiffs in *Belin v. Health Insurance Innovations*, *Inc.*, No. 0:19-cv-61430-AHS (S.D. Fla.)("*Belin*") faced when they settled with Benefytt. Moreover, class certification was far from a certainty even though this Court granted the plaintiffs' motion for class certification in *Belin*. Indeed, the plaintiffs' motion for class certification was recently denied in a similar action brought against Benefytt. *Ketayi v. Health Enrollment Group,* No. 20-cv-1198-RSP-KSC, 2023 WL 6373071 (S.D. Cal. Sept. 14, 2023).

Defendants raised substantial arguments in opposition to class certification in this case, some of which were not made in *Belin*. For example, Defendants raised the possibility that the settlement reached and approved by the Court in *FTC v. Benefytt Technologies, Inc.*, No. 8:22-cv-01794-TPB-JSS (M.D. Fla.) on August 11, 2022, which required Benefytt to pay the FTC $100 million for purposes of providing redress to consumers, could make many putative class members whole and deprive them of standing. *See* D.E. 151, at 28. Similarly, Defendants argued that this case was distinguishable from *Belin* in that it concerns a broader array of products, distributors and marketing representations, purportedly defeating the predominance of common issues and rendering class certification inappropriate. *Id.*, at 12-24. Defendants also filed motions to exclude the testimony of Plaintiffs' two experts supporting class certification. D.E. 155, D.E. 171.

Even if Plaintiffs' motion for class certification were granted, Plaintiffs still would have faced the possibility of Rule 23(f) review by the Eleventh Circuit, as well as additional risks at summary judgment and trial. For these reasons, Plaintiffs and Class Counsel, who have experience in similar litigation, support the Settlement.

The thorough record developed over years of litigation, the extensive mediation talks leading to the Settlement and the consensus support from concerned parties give every indication that the Settlement is procedurally and substantively fair, and merits the Court's final approval.

## II.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs originally filed this action against Benefytt on May 5, 2020, in the Northern District of Alabama, the district where Plaintiffs reside. *See Griffin v. Benefytt Technologies, Inc.*, No. 2:20-cv-630-AKK (N.D. Ala.). In their original complaint, Plaintiffs alleged that Benefytt and its marketing partners Assurance, Nationwide  and Simple Health -- which Plaintiffs identified as Benefytt's co-conspirators but did not name as Defendants -- marketed health insurance policies as comprehensive medical insurance that satisfied the ACA's individual insurance mandate but instead sold non-ACA compliant limited benefit indemnity plans and short term insurance plans along with various add-on products like discount cards, association memberships and accidental health insurance to make the health insurance seem more comprehensive than it really was. D.E. 1, at ¶ 1. Plaintiffs further alleged that the policies left consumers with little or no insurance, no coverage for preexisting conditions and prescription drugs and minimal coverage for other services. *Id.* Based on these allegations, Plaintiffs, on behalf of themselves and a putative class of similarly situated consumers, asserted claims against Benefytt for violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* Count I of the original complaint alleged violation of RICO, 18 U.S.C. § 1962(c); Count II alleged RICO conspiracy in violation of 18 U.S.C. § 1962(d); Count III alleged violation of 18 U.S.C. § 2 by aiding and abetting in violation of 18 U.S.C. § 1962(c); and Count IV sought declaratory and injunctive relief under 18 U.S.C. § 1964(a).  *Id.*, at ¶¶ 118-135.

In response to the original complaint, Benefytt brought a motion to dismiss for failure to state a claim (D.E. 18) as well as a motion to transfer the action, pursuant to the first-filed rule, to the Southern District of Florida, where the *Belin* action was pending. D.E. 27. In its motion to transfer, Benefytt argued that Plaintiffs "propose nearly the same putative class, allege nearly the same facts, and assert nearly the same claims against nearly the same defendants." D.E. 27, at 1. Shortly after Benefytt filed its motion to transfer, Plaintiffs filed a motion for leave to amend their complaint to add Assurance as a Defendant. D.E. 28.

On November 9, 2020, Judge Kallon of the Northern District of Alabama granted the motion to transfer and sent the action to the Southern District of Florida. D.E.33. As grounds for transfer, Judge Kallon found that "because both cases assert most of the same allegations and accuse the defendants of virtually the same conduct, it would be a waste of judicial resources for two separate courts to evaluate these facts." *Id.*, at 11 (quotations and citations omitted).

Following transfer, on February 9, 2021, this Court granted Plaintiffs' pending motion for leave to amend their complaint and denied Benefytt's pending motion to dismiss as moot. D.E. 49. Plaintiffs filed an Amended Complaint on February 16, 2021, in which it named Assurance as a Defendant. D.E. 50.

Benefytt and Assurance both filed motions to dismiss for failure to state a claim. D.E. 57, 78. In separate orders issued on February 25, 2021 and March 30, 2021, respectively, this Court denied both motions as to Plaintiffs' claims for damages but granted them as to Plaintiffs' claims for injunctive relief on the basis that it was unlikely that Plaintiffs would be misled by Defendants' sales practices again in the future. D.E. 84, 94.

Per Defendants' request, on May 6, 2022, Plaintiffs filed an unopposed motion for leave to file a Second Amended Complaint to clarify that Plaintiffs were not asserting the claims in this

action on behalf of persons who previously released their claims in connection with the settlement reached in *Belin*, and to further clarify that Defendants' sales practices with respect to both limited benefit indemnity plans and short term insurance plans were at issue. D.E.103. The Court granted Plaintiffs' motion for leave to amend on May 16, 2022 (D.E. 106) and Plaintiffs filed their Second Amended Complaint on May 17, 2022. D.E. 107. Defendants answered the Second Amended Complaint on May 26, 2022, and May 31, 2022, respectively. D.E. 109 (Assurance), D.E. 110 (Benefytt).

The parties engaged in extensive discovery over the ensuing months. Plaintiffs issued 74 requests for production of documents to Benefytt and 47 requests for production of document to Assurance. D.E. 210-2, at ¶ 8. Defendants produced over 100,000 pages of documents in response to these requests, which Plaintiffs reviewed and analyzed. *Id.* Plaintiffs also issued 25 interrogatories to Benefytt and 17 interrogatories to Assurance. *Id.*

In addition, Plaintiffs deposed the Defendants' corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6), as well as several of Defendants' employees and Defendants' two experts. *Id.*, at ¶¶ 10-12. Plaintiffs also filed and fully briefed a motion to exclude the testimony of one of Defendants' experts. *Id.*, at ¶ 12.

Plaintiffs also served subpoenas upon several non-parties, including distributors American National and Priority Insurance (who Plaintiffs only learned through discovery had sold insurance products to them) and former Benefytt executives and took their depositions. *Id.*, at ¶ 11.[2]

Each of the Plaintiffs responded to lengthy requests for production, interrogatories and requests for admission. *Id.*, at ¶ 9. Together Plaintiffs produced more than 1,000 pages of

---

[2] "American National" refers to American National Benefits Group, LLC. "Priority Insurance" refers to Independent Insurance Consultant, Inc., d/b/a Priority Insurance.

documents, including health-related documents containing personal information. *Id.* Plaintiffs also spent considerable time preparing for and sitting for their depositions. *Id.*

Plaintiffs' two experts likewise spent a significant amount of time preparing their reports as well as preparing for and sitting for their depositions. *Id.*, at ¶ 12. Plaintiffs also filed briefs in opposition to motions filed by Defendants to exclude the testimony of both of their experts. *Id.*

Plaintiffs' efforts in discovery culminated in the filing of a motion for class certification supported by over 50 exhibits and two expert reports January 30, 2023. D.E.143, 159. On the same day, Plaintiffs moved for leave to file a Third Amended Complaint conforming the class definitions to those in Plaintiffs' motion for class certification and identifying American National and Priority Insurance as Defendants' co-conspirators. D.E. 137. Plaintiffs' motion for leave to file the Third Amended Complaint was granted on February 1, 2023 (D.E. 140) and the Third Amended Complaint was filed on the same day. D.E. 141. With the filing of Plaintiffs' reply in support of its motion for class certification on March 13, 2023 (D.E. 159), that motion was fully briefed.

Two months later, on May 23, 2023, the Benefytt Defendants filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. D.E. 183. As a result, on May 26, 2023, this litigation was stayed as to Benefytt. D.E. 184. Thereafter, Plaintiffs and Assurance jointly requested that the Court stay the balance of the litigation pending their previously-scheduled mediation. D.E. 185. The Court granted the parties' request on June 7, 2023. D.E. 186.

While they were litigating, the parties engaged in extensive settlement negotiations, including multiple mediation sessions. The parties' first mediation session, in which Plaintiffs, Benefytt and Assurance all participated, took place on October 13, 2022, before John S. Freud. The mediation lasted a full day but resulted in an impasse. D.E. 210-2, at ¶ 14.

On June 19, 2023, Plaintiffs and Assurance participated in a second all-day mediation before Mr. Freud, following which they reached a $13.5 million settlement in principle. This agreement in principle was later reduced to writing in a term sheet that was executed on June 28, 2023 and, ultimately, memorialized in the final Settlement Agreement. *Id.*

In response to requests of Plaintiffs and Assurance for more time to obtain class member contact information from Benefytt and finalize their settlement, the Court subsequently extended the stay of the litigation on July 14, 2023, August 14, 2023 and finally, on September 14, 2023, when it ordered the parties to file their settlement papers on or before November 14, 2023. D.E. 197, D.E. 199 and D.E. 201.

On December 1, 2023, the Court entered an Order preliminarily approving the settlement and providing for Notice. D.E. 216. In its Order, the Court preliminarily certified the following Classes and Subclasses for purposes of the Settlement:

American National Class. All individuals who purchased Benefytt's limited benefit indemnity plans or short term medical plans through American National from May 5, 2016 through the date of Preliminary Approval, and paid fees and/or premiums that were not completely recovered through a refund or chargeback.

Assurance Class. All individuals who purchased Benefytt's limited benefit indemnity plans or short term medical plans through Assurance from May 5, 2016 through the date of Preliminary Approval, and paid fees and/or premiums that were not completely recovered through a refund or chargeback.

Benefytt Class. All individuals who purchased limited benefit indemnity plans or short term medical plans directly from Benefytt from May 5, 2016 through the date of Preliminary Approval, and paid fees and/or premiums that were not completely recovered through a refund or chargeback.

Priority Insurance Class. All individuals who purchased Benefytt's limited benefit indemnity plans or short term medical plans through Priority Insurance from May 5, 2016 through the date of Preliminary Approval, and paid fees and/or premiums that were not completely recovered through a refund or chargeback.

Medical Expense Subclass. All individuals within any of the above Classes who incurred Uncovered Medical Expense(s).

### III.     THE TERMS OF THE SETTLEMENT AGREEMENT

The Parties have agreed to the following settlement terms.

#### A.     The Settlement Class

The Settlement Class Members include the Classes and Subclass certified by this Court on December 1, 2023.

#### B.     The Settlement Consideration

Assurance will pay $13.5 million to resolve this class action. The Settlement Administrator received $13.5 million in its escrow account from Assurance shortly after preliminary approval. Declaration of Andrea R. Dudinsky ("Dudinsky Decl."), at ¶ 19, attached as **Exhibit A**.

No portion of the Settlement Fund will revert to Defendants. *See* Settlement Agreement §VI(o). Notice and Administrative Expenses will be deducted from the Settlement Fund and paid to the Settlement Administrator. *See id.* § VI(g). Attorneys' fees and expense reimbursements as approved by the Court will be paid to Class Counsel. *See id.* § IV (a). Plaintiffs seek an award of 33.33% of the class action settlement payment in attorneys' fees plus reimbursement of litigation expenses. *See* D.E. 218. The balance, along with any interest accrued on the Settlement Fund, will be applied to pay claims of Settlement Class Members. *See id.* §VI(d).

The class release simply encompasses claims that were or could have been asserted in the case. *See id., at* §§ I(dd), IX. The Released Parties and Releasing Parties are comprised of (i) Assurance, (ii) Settlement Class Members who do not timely opt out of the Settlement and (iii) Class Counsel.[3]

---

[3] For the avoidance of doubt, nothing in the Settlement affects the rights of the Parties, including the treatment of Plaintiffs' claims against the Benefytt Defendants, under the terms of the Chapter 11 plan that was confirmed by the United States Bankruptcy Court for the Southern District of Houston by order entered on August 30, 2023, in the Benefytt debtors' jointly-administered chapter 11 cases. *See* D.E. 481 in Case No. 23-90566, Bankr. S.D. Tex.

C.      **Notice and Administration**

The Court appointed the Parties' suggested administrator, Kroll Settlement Administration, LLC, to act as Settlement Administrator. D.E. 216 at 4.  The Settlement Administrator established the Settlement Website at www.benefyttsettlement.com on October 25, 2023, and it went live on January 16, 2024. Dudinsky Decl., at ¶ 3. On January 15, 2024, Kroll sent 371,662 Direct Notices via email and 681 Direct Notices via U.S. Mail.  *Id.*, at ¶¶ 4-5.  Of the 371,662 Direct Notices sent via email, 74,765 were rejected/bounced back as undeliverable.  On February 7, 2024, Kroll caused 74,765 Mail Notices to be mailed via first-class mail to Settlement Class Members for whom the E-Mail Notice was rejected/bounced back as undeliverable.  *Id.*, at ¶ 6.

As of April 24, 2024, the notices drove 20,910 visits and 37,653 page views to the Settlement Website along with 677 phone calls to the Settlement Contact Center. *Id.*, at ¶ 7.  As of April 24, 2024, Kroll received a total of 4,263 Claim Forms, comprised of 3,929 Claim Forms filed electronically through the Settlement Website and 334 Claim Forms received by mail. Of the 4,263 Claim Forms, 2,656 claimed inclusion in the Medical Expense Subclass. *Id.*, at ¶ 10.

The Settlement Administrator shall be responsible for overseeing the calculation of, and implementing the distribution of, the Net Consideration to Settlement Class Members. *See* Settlement Agreement, at § VI(o). Each Participating Settlement Class Member shall receive his or her *pro rata* share of the Settlement Fund. *See id*. The Settlement Administrator shall calculate each share according to the formula provided in the Settlement Agreement. *See id.* Participating Settlement Class Members in the Medical Expense Subclass will receive a multiplier of two, three, or four times his or her base share. This multiplier, while not an exact determination of Participating Class Members' shares, recognize the enhanced damages of Subclass members while

avoiding the considerable administrative burdens and costs of having a document-intensive, evidentiary claim process. D.E. 210-2, at ¶ 17.

Finally, shortly after preliminary approval, the Settlement Administrator caused the mailing of CAFA Notices to appropriate officials pursuant to 28 U.S.C. § 1715(b). *See* Settlement Agreement, at § VI(h). No objections were received in response. Dudinsky Decl., at ¶ 2.

## IV.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

The Court reviews a class action settlement for fairness, reasonableness and adequacy. *See Fraught v. Am. Home Shield Corp*., 668 F.3d 1233, 1240 (11th Cir. 2011). "There exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (Altonaga, J.) (citations omitted). "Thus, in reviewing a proposed settlement, as here, the Court must take into account 'the clear policy in favor of encouraging settlements,…particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'" *Id*. (quoting *Patterson v. Newspaper & Mail Deliverers' Union*, 514 F.2d 767, 771 (2nd Cir. 1975)).

The Court "will not substitute its business judgment for that of the parties…." *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011)(citations and quotations omitted). Rather, the Court shall consider the question of "whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *Id*.

Final approval requires the Court to evaluate a number of factors. The December 2018 amendments to Rule 23 provide explicit instructions, requiring notice if the court is likely to approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a settlement, the court should consider whether:

    (A)      the class representatives and class counsel have adequately represented the class;

    (B)      the proposal was negotiated at arm's length;

    (C)      the relief provided for the class is adequate, taking into account:

          (i)      the costs, risks, and delay of trial and appeal;

          (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

          (iii)      the terms of any proposed award of attorney's fees, including timing of payment; and

          (iv)      any agreement required to be identified under Rule 23(e)(3); and

    (D)      the proposal treats class members equitably relative to each other.

*Id*. 23(e)(2).

In exercising their discretion, courts in this Circuit also continue to analyze class action settlements using the so-called *Bennett* factors. *See Ferron v. Kraft Heinz Foods. Co*., 2021 WL 2940240, at *7-*8 (S.D. Fla. July 13, 2021)(analyzing the Rule 23(e) and *Bennett* factors together to approve settlement). The *Bennett* factors consider (i) the likelihood of success at trial; (ii) the range of possible recovery; (iii) the range of possible recovery at which a settlement is fair, adequate and reasonable; (iv) the anticipated complexity, expense and duration of litigation; (v) the opposition to the settlement; and (vi) the stage of proceedings at which the settlement was achieved. *See Saccoccio v. JP Morgan Chase Bank, N.A*., 297 F.R.D. 683, 691 (S.D. Fla. 2014) (citing *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11ᵗʰ Cir. 1984)).

Here, an analysis of both the Rule 23(e)(2) factors and the *Bennett* factors shows that the proposed Settlement is fair, adequate and reasonable.

**A.**      <u>**The Adequacy of Representation by Class Representatives and Class Counsel**</u>

Rule 23(e)(2)(A) considers whether the class received adequate representation. The Court already has ruled in its Order Preliminarily Approving Settlement and Providing for Notice that Plaintiffs are adequate class representatives, and has appointed Plaintiffs as such. D.E. 216, at ¶¶ 1-3. As for Class Counsel, adequacy is "presumed" absent specific proof to the contrary. *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1309 (S.D. Fla. 2015). In the same Order, this Court

appointed the undersigned as Class Counsel in this case. *Id.* There has been no challenge to Class Counsel's adequacy to serve as Class Counsel.

### B.    Whether Negotiations Were Conducted at Arms-Length

Rule 23(e)(2)(B) looks at whether the parties negotiated an arms-length settlement. "In determining whether there was fraud or collusion, the Court examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Berman v. Gen. Motors, LLC*, 2019 WL 6163798, at *4 (S.D. Fla. Nov. 18, 2019)(citations omitted).

There is no hint of collusion here. The Court acknowledged the arms-length negotiations between Class counsel and Assurance over a period of months with mediator John S. Freud. D.E. 216, at ¶ 5.  Here, the potential damages that Settlement Class Members could be awarded at trial are immense. The fees and premiums paid by Settlement Class Members amount to hundreds of millions of dollars, and a successful RICO verdict would have trebled that number. In addition, Medical Expense Subclass members incurred millions more in expenses. Given the potential size of Plaintiffs' claims and Benefytt's financial condition, the possibility that Settlement Class Members could collect on a victory at trial was far from a certainty. The analysis therefore focuses on whether Plaintiffs and Class Counsel achieved an adequate settlement given the financial realities of this case. D.E. 210 at 18; Settlement Agreement, at § IX(e).

Furthermore, no portion of the settlement will revert to Defendants. *See* Settlement Agreement, at § VI(o). And although Defendants agree not to oppose Class Counsel's request for an attorneys' fee award of up to 33.33%, Settlement is not contingent upon any particular award to Class Counsel. *See id.* § IV(e).

Relatedly, the sixth *Bennett* factor looks at the stage of litigation at which the parties reached settlement. By the time the Parties reached a settlement here, they had been litigating heavily for nearly three years, had conducted significant discovery, briefed numerous motions relating to potentially dispositive legal issues and hired experts in the fields of insurance and consumer marketing to analyze their claims and defenses. The Parties were well-positioned to evaluate the benefits of the Agreement and consider the expense, risks and uncertainty of continued and likely protracted litigation.

### C.      The Adequacy of Relief Provided by the Settlement

Rule 23(e)(2)(C) looks at whether the relief provided in the settlement is adequate, taking into account: (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of distributing relief and processing claims; (iii) the terms of any attorney's fees award, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. Relatedly, the first through fifth *Bennett* factors analyze the likelihood of success at trial; the range of possible recovery; the range of possible recovery at which a settlement is fair, adequate and reasonable; the anticipated complexity, expense and duration of litigation; and any opposition to the settlement. *See Saccoccio*, 297 F.R.D. at 691.

Addressing the *Bennett* factors first, in determining whether the Settlement is adequate and fair in comparison to the potential range of recovery, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Berman*, 2019 WL 6163798, at *5 (quoting *Lipuma*, 406 F. Supp. 2d at 1323). "[T]he fact that a proposed settlement is unfair or inadequate." *Ferron*, 2021 WL 2940240, at *7-8 (quoting *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988)). "A settlement

can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.*

As noted above, the potential damages that Settlement Class Members could be awarded at trial are massive. However, given Benefytt's financial condition, the possibility that Settlement Class Members could collect on a victory at trial was far from a certainty. The analysis therefore focuses on whether Plaintiffs and Class Counsel achieved an adequate settlement given the financial realities of this case. D.E. 210 at 18.

In determining whether a settlement is adequate, the Court may rely at least somewhat upon the judgment of experienced counsel. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel."). Here, Class Counsel have significant experience in class action and complex fraud litigation, and believe that under these circumstances, the multimillion-dollar relief provided by the Settlement is fair, reasonable and adequate under the circumstances. D.E. 210-2, at ¶¶ 19-20, and D.E. 210-3, at ¶¶ 19.

Regarding the fifth *Bennett* factor, Plaintiffs emphasize that of the hundreds of thousands of Settlement Class Members who received notice, none has objected to the Settlement.

### i.     The Risks, Costs and Delay of Continued Litigation

The Settlement also finds support from the four factors enumerated in new Rule 23(e)(C). Under Rule 23(e)(2)(C)(i), which examines the risks, costs and delay of continued litigation, the Court must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Berman*, 2019 WL 6163798, at *6 (quoting *Lipuma*, 406 F. Supp. 2d at

1323). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Id.* (quoting *Behrens*, 118 F.R.D. at 543).

Here, the potential costs and delay of continued litigation in this case are substantial. The Settlement will bring to conclusion a complex class action lawsuit pending for nearly four years. But for the Settlement, the Parties will continue to incur significant additional legal fees and expenses related to further discovery, motion practice and potentially trial. A potential appeal under Federal Rule of Civil Procedure 23(f) in the event the Court were to grant class certification, which was far from certain, pre-trial motions, trial, and resolution of any subsequent appeals would likely have taken years, delaying any benefit to the Settlement Class Members by years as well. Moreover, the risk for Plaintiffs and Class Members includes the potential that after a trial and possibly an appeal, any judgment against Defendants would be uncollectible.

Relatedly, the first *Bennett* factor examines the likelihood of success at trial. As noted above, Plaintiffs have successfully navigated through multiple motions to dismiss but class certification has not yet been granted and any order granting class certification would be subject to appellate review under Rule 23(f). Further, Defendants possess defenses that they could assert at trial or via summary judgment. Plaintiffs and Class Counsel also have considered the fact that Assurance has shown its willingness and ability to defend the lawsuit through trial and possibly appeal. Yet Assurance has concluded that it is desirable to settle the claims to avoid the costs, disruption and distraction of further litigation. Given these circumstances, and the fact that victory at trial would be uncertain, the risks attendant to continued litigation support a settlement now.

### ii.     The Effectiveness of Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) examines the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Of the Participating

Class Members, 2,656 joined the Medical Expense Subclass. Dudinksy Decl., at ¶ 10. The Settlement Administrator will calculate each Participating Class Member's *pro rata* share of the Settlement Fund as provided in Section VI(d) of the Settlement Agreement, assigning each Participating Class Member his or her *pro rata* share of the Net Consideration. Medical Expense Subclass members will receive a multiplier on their *pro rata* distribution. When the numbers are calculated, the Settlement Administrator will send checks to Participating Class Members for their respective shares of the Distribution.

### iii.        The Reasonable Terms Relating to Attorneys' Fees

Rule 23(e)(2)(C)(iii) looks at "the terms of any proposed award of attorney's fees, including timing of payment." Here, Class Counsel have requested 33.33% of the net Settlement Amount of $13.5 million. D.E. 218. That request is consistent with *Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which mandates use of the percentage method.  Following *Camden I*, fee awards in the Eleventh Circuit have averaged around one-third. *See Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide – roughly one-third"); *see also George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (discussing the normality of 33% contingency fees); Eisenberg, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%). Given the diligence and experience of Class Counsel, which investigated and developed the claims, the complexity of the issues involved, the substantial amount of time dedicated to the Action and Settlement and the financial risk associated with the representation, a fee of 33.33% is reasonable here.

As to the timing of payment to the attorneys, the Settlement Agreement calls for payment within seven days of a Final Approval Order and Judgment of this Court. *See* Settlement Agreement, at § IV(b). Class Counsel agrees that, to the extent their fees or costs are reduced, vacated or reversed, or should this Settlement be terminated or cancelled for any reason, they will return the funds to the Escrow Agent within 15 days. *See id.*

### iv.       Whether There Are Side Agreements

The Parties have made no side agreements in connection with the proposed settlement. D.E. 210-2, at ¶ 18.

### D.       The Equitable Treatment of Class Members Relative to Each Other

Finally, Rule 23(e)(2)(D) analyzes whether the Settlement Agreement treats all members of the Settlement Class equally. Here, the Settlement Agreement treats all members of the Settlement Class equally as each received the opportunity to submit a Claim Form and be paid a *pro rata* amount based on the amount of unrefunded or unforgiven fees and premiums they paid. Also, members of the Medical Expense Subclass had the opportunity to affirm under penalty of perjury that they incurred uncovered medical expenses during the Class Period. Each Subclass member will receive a reasonable multiplier of their share on the basis that they incurred damages beyond the payment of fees and premiums. Especially given the limited Settlement Fund here, this method of approximating Subclass damages is preferable to the time and expense of a full claims-made procedure complete with the submission of medical records, and the review and verification of medical expenses by paid experts.

Nor do the Settlement Agreement's release provisions operate in an inequitable manner. *See Burrow v. Forjas Taurus, S.A.*, 2019 WL 4247284, at *10(S.D. Fla. Sept. 6, 2019) (citing Fed. R. Civ. P. 23(e)(2)(D), 2018 committee notes (Rule instructs courts to evaluate whether "the scope

of the release may affect class members in different ways")). Here, the release applies equally to all Settlement Class Members. *See* Settlement Agreement, at § I(dd). Moreover, the release is narrowly tailored to the claims that were advanced or could have been advanced in this lawsuit.

## V.   SETTLEMENT CLASS MEMBERS RECEIVED ADEQUATE NOTICE AND AN OPPORTUNITY TO BE HEARD

For a court to exercise jurisdiction over the claims of absent class members, those class members must have received "'the best practicable' notice which was 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1342 (quoting *Phillips Petroleum Co. v. Shutts,* 472 797, 811-12 (1985)).

This Court approved the Class Notice in the preliminary approval stage.  That Class Notice was fashioned after the Federal Judicial Center models and fully apprised Settlement Class Members of the existence of the lawsuit and the claims asserted, the proposed Settlement Agreement and the information they needed to make informed decisions about their rights. The notices generated tens of thousands of Settlement Website page views and hundreds of phone calls to the Settlement Administrator's call center. Ultimately, Settlement Class Members submitted 4,263 claim forms. Dudinsky Decl., at ¶ 10.

This claims submission rate represents 1.1% of all Settlement Class Members, which is within the reasonable claims rate for a suit with large numbers of class members. *See, e.g., Poertner v. Gillette Co.,* 618 Fed. Appx. 625, 625-26 (11th Cir. 2015) (affirming settlement where 0.017% of 7.26 million settlement class members submitted claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (Seitz, J.) (approving settlement where 1.1% of 10 million class members returned claim forms); *Saccochio*, 297 F.R.D. at 696 (approving settlement of more than 700,000 class members and stating "this Court notes that courts in this district have approved

claims-made settlements where the participation rate was very low"); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029, 2017 WL 9472860, at *3 (S.D. Fla. Nov. 20, 2017) (Middlebrooks, J.) (approving settlement where 2% of 374,399-person settlement class submitted claim forms).

## VI.   THE COURT SHOULD AWARD ATTORNEYS' FEES AND COSTS TO CLASS COUNSEL

As stated in detail in Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Service Awards (D.E. 218), Plaintiffs seek an attorneys' fee award of $4.5 million, one third of the $13.5 million Settlement, and reimbursement of $253,865.88 in expenses. Based on Plaintiffs' analysis of the *Camden I* factors contained in their fee motion, Plaintiffs ask the Court to award the requested fees and expenses.

## VII.   CONCLUSION

In sum, Plaintiffs ask this Court to enter the proposed Final Approval Order attached as **Exhibit B**, grant final approval of the Settlement of this Action and dismiss the Action with prejudice, as well as any other or further relief the Court deems necessary or proper.

### <u>LOCAL RULE 7.1(a)(3) CERTIFICATION</u>

Plaintiffs William James Griffin, Ashley Lawley, William "Jeff" Cooper, Sandra Wilson and Vicki Needham ("Plaintiffs") by and through their undersigned counsel hereby certify pursuant to Local Rule 7.1(a)(3) that Plaintiffs' counsel conferred with Defendants' counsel, and Defendants do not oppose the relief sought in this Motion.

Dated: April 30, 2024                              **WHATLEY KALLAS, LLP**

*/s/ Charles Nicholas Dorman*
Charles Nicholas Dorman
111 North Orange Avenue
Suite 800
Orlando, Florida 32801
Telephone: (321) 325-6624
Facsimile: (800) 922-4851
ndorman@whatleykallas.com

Joe R. Whatley Jr.
W. Tucker Brown
2001 Park Place North 1000
Park Place Tower
P.O. Box 10968
Birmingham, AL 35203
Telephone: (205) 488-1200
Facsimile: (800) 922-4851
jwhatley@whatleykallas.com
tbrown@whatleykallas.com

Patrick J. Sheehan
101 Federal Street, 19th Floor
Boston, MA 02110
Telephone: (617) 203-8459
Facsimile: (800) 922-4851
psheehan@whatleykallas.com

**MATT CARROLL LAW, LLC**
Matt Carroll
P.O. Box 660749
Vestavia, AL 35216
Telephone: (205) 240-2586
matt@mattcarrollfirm.com

**INGE JOHNSTONE LAW OFFICES**
F. Inge Johnstone
1 Independence Plaza
Homewood, AL 35209
Telephone: (205) 771-4009
Facsimile: (205) 771-4049
ijohnstone@ingejohnstone.com

J. Dennis Gallups
PO Box 381894
Birmingham, AL 35283

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has been electronically filed on April 30, 2024, with the Clerk of the Court using the CM/ ECF system which will send notification of such filing to the following counsel of record:

Val Leppert
KING & SPALDING LLP
200 S. Biscayne Blvd., Suite 4700
Miami, FL 33131
(404) 572-4600
vleppert@kslaw.com

Dale A. Evans Jr.
Florida Bar Number: 98496
LOCKE LORD LLP
777 South Flagler Drive, Suite 215-East
West Palm Beach, Florida 33401
Telephone: 561-833-7700
Facsimile: 561-655-8719
dale.evans@lockelord.com

Vincent A. Sama (*Pro Hac Vice*)
Catherine B. Schumacher (*Pro Hac Vice*)
Daphne Morduchowitz (*Pro Hac Vice*)
Sarah Fedner (*Pro Hac Vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
vsama@seyfarth.com
cschumacher@seyfarth.com
dmorduchowitz@seyfarth.com
sfedner@seyfarth.com

Martha Rosa Mora
AVILA RODRIGUEZ HERNANDEZ
MENA & FERRI
2525 Ponce de Leon Boulevard
Penthouse 1225
Coral Gables, FL 33134
(305) 779-3567
mmora@arhmf.com

Renée B. Appel (*Pro Hac Vice*)
975 F Street NW
Washington, D.C. 20004
Telephone: (202) 828-5371
rappel@seyfarth.com

*/s/ Charles Nicholas Dorman*
Attorney for Plaintiffs